UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LOUISIANA DELTA SERVICE CORPS (operating as Serve Louisiana),
Plaintiff,

                                            3:25-cv-00378-JWD-RLB

v.

CORPORATION FOR NATIONAL AND COMMUNITY SERVICE (d/b/a AmeriCorps
Agency),
UNITED STATES DEPARTMENT OF GOVERNMENT EFFICIENCY (DOGE),
OFFICE OF MANAGEMENT AND BUDGET,
Defendants.

### Memorandum of Law in Support of Motion for Preliminary Injunction

### Introduction and Background

Louisiana Delta Service Corps (operating as Serve Louisiana) seeks a preliminary and

permanent injunction to halt the termination of its AmeriCorps State and National (ASN) grant

funding. On April 25, 2025, the AmeriCorps Agency – acting at the direction of the Office of

Management and Budget (OMB) and the Department of Government Efficiency (DOGE) –

issued a Termination Notice to Louisiana's state service commission (Volunteer Louisiana)

purporting to immediately terminate all AmeriCorps grant awards, including those supporting

Serve Louisiana's program. The notice cited Uniform Guidance regulation 2 C.F.R.

§ 200.340(a)(4) as authority, stating that "the award no longer effectuates agency priorities" and

declaring the termination a "final agency action" with no administrative appeal. Serve

Louisiana's AmeriCorps program – which was mid-performance, fully compliant, and funded by

congressional appropriations – was thus abruptly ordered to cease all activities, forcing the exit

of AmeriCorps members serving in Louisiana communities and jeopardizing vital service

projects.

Serve Louisiana is now moving for a temporary restraining order and preliminary injunction

under Fed. R. Civ. P. 65 to enjoin the implementation of this grant termination and to maintain

the status quo pending full adjudication of its claims. As set forth below, federal law and precedent strongly favor injunctive relief. Terminating an active federal grant without statutory authority, without adhering to mandated procedures, and without due process is *ultra vires*, arbitrary, capricious, and unconstitutional. Serve Louisiana is likely to succeed on the merits of multiple claims under the Administrative Procedure Act ("APA"), the National and Community Service Act (which governs AmeriCorps programs), the federal Uniform Guidance for grants, the Appropriations Clause of the U.S. Constitution, and the Fifth Amendment's Due Process Clause. Absent an injunction, Serve Louisiana and the communities it serves will suffer irreparable harm – including the dismantling of service programs and loss of opportunities that later money damages cannot remedy. By contrast, maintaining funding for a congressionally authorized service program poses little harm to Defendants and serves the public interest in lawful, effective administration of federal programs.

This memorandum first reviews the statutory and regulatory framework protecting grant recipients and the relevant legal standards for preliminary injunctions. It then demonstrates how the facts of this case satisfy all four factors for preliminary injunctive relief in the U.S. District Court for the Middle District of Louisiana. Finally, in Section V, it provides a conclusion and respectfully requests that the Court grant the preliminary injunction, as well as a permanent injunction upon final judgment, to prevent the unlawful termination of Serve Louisiana's AmeriCorps funding. A proposed order is submitted herewith.

## I. Statutory and Regulatory Framework

Several federal statutes, regulations, and constitutional provisions establish limits on terminating federal grant funds and confer rights on grantees:

- National and Community Service Act (NCSA) – Congress created AmeriCorps and related programs through the NCSA (42 U.S.C. § 12501 *et seq.*). The Act includes

specific provisions requiring notice and hearing before AmeriCorps assistance can be suspended or terminated for cause. In particular, 42 U.S.C. § 12636 provides that the Corporation (AmeriCorps) may suspend or terminate payments under a grant only for "material failure to comply" with the terms, and even then "assistance shall not be terminated or revoked… unless the recipient… has been afforded reasonable notice and opportunity for a full and fair hearing." The statute thus does *not* authorize termination for convenience or changed priorities; it contemplates termination solely for cause (non-compliance) and guarantees due process protections (notice and hearing) in such cases

- AmeriCorps Regulations (45 C.F.R. Part 2540) – The AmeriCorps Agency's own regulations echo the NCSA's due process requirements. 45 C.F.R. § 2540.400(b) states that AmeriCorps "may terminate or revoke assistance for failure to comply with applicable terms and conditions" but "must provide the recipient reasonable notice and opportunity for a full and fair hearing" before doing so. The regulation details that the agency must send written notice of intent to terminate (with grounds and effective date) and give the grantee at least 7 days to show cause why the grant should not be terminated. The grantee may request an evidentiary hearing, which must be recorded and available for inspection. These procedural safeguards apply to any termination for cause of an AmeriCorps grant. Notably, nothing in Part 2540 authorizes termination for new agency priorities or political reasons – the only ground for termination in the regulation is non-compliance with terms. By issuing a *no-notice, immediate termination* citing "agency priorities," AmeriCorps bypassed its own regulations and the NCSA's mandate for notice and hearing.

- Uniform Guidance (2 C.F.R. Part 200) – Federal grants are also governed by the OMB Uniform Administrative Requirements. 2 C.F.R. § 200.340 ("Termination") sets the general rules for ending a federal award. Under the current version of § 200.340 (effective Oct. 1, 2024), a Federal award may be terminated (1) by the agency for failure

to comply with terms; (2) by mutual agreement with the recipient; (3) by the recipient's voluntary withdrawal; or (4) "*by the Federal agency… pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities*." (emphasis added). Crucially, subsection (a)(4) permits termination for a change in agency priorities only if that condition was "clearly and unambiguously" specified in the award's terms and conditions and is authorized by law. The Uniform Guidance explicitly requires agencies to "specify all termination provisions in the terms and conditions" of the grant. Here, AmeriCorps's *General Terms and Conditions* for the FY2024–2025 grants did not include any clear term allowing termination for "no longer effectuating priorities" – in fact, AmeriCorps's standard terms affirm that "2 C.F.R. § 200.340(a)(2) prohibits arbitrary termination of grant awards by AmeriCorps," permitting termination only for cause or if new evidence raises serious doubts about the project's feasibility. In other words, AmeriCorps promised its grantees it would not arbitrarily terminate awards, even referencing the prior Uniform Guidance's prohibition on such terminations. Yet the April 2025 termination did precisely what the agency's terms forbid – an arbitrary, unilateral termination not based on any failure by the grantee. Moreover, because the NCSA itself does not "authorize by law" convenience terminations of AmeriCorps grants (as noted above), OMB's § 200.340(a)(4) is *inapplicable* to this program: the "new priorities" basis cannot be invoked contrary to the program's governing statute. Thus, both the Uniform Guidance and AmeriCorps's grant conditions reinforce that this termination was unauthorized and contrary to law.

- Administrative Procedure Act (APA) – The APA, 5 U.S.C. §§ 701–706, provides that persons aggrieved by final agency actions are entitled to judicial review, except where another statute provides an exclusive remedy. Under 5 U.S.C. § 706(2), a reviewing court "shall *hold unlawful and set aside* agency action" that is "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law" or that is "contrary to constitutional right" or "in excess of statutory jurisdiction" (5 U.S.C. § 706(2)(B), (C)). Here, AmeriCorps's mass termination of grants with "no individualized consideration" of each award and no articulated valid ground is the epitome of arbitrary and capricious agency action. The termination also violated the NCSA and AmeriCorps's own regulations (exceeding statutory authority) and infringed Serve Louisiana's constitutional rights, as discussed below. The APA also authorizes courts to preserve status quo pending review. 5 U.S.C. § 705 allows a court to "issue all necessary and appropriate process" to postpone the effective date of an agency action or preserve rights "to the extent necessary to prevent irreparable injury", which is exactly what Serve Louisiana seeks.

- Appropriations Clause (U.S. Const. art. I, § 9, cl. 7) – The U.S. Constitution entrusts the power of the purse to Congress. The Appropriations Clause mandates: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." This is a restriction on Executive Branch disbursement authority, meaning federal agencies may not spend (or withhold) funds except as authorized by Congress. Here, Congress appropriated funds for AmeriCorps State and National grants for the fiscal year, and Serve Louisiana's grant was duly awarded under those appropriations. The Executive cannot simply "undraw" or impound those funds by terminating the grant for policy reasons not sanctioned by Congress. Such an action effectively nullifies Congress's appropriation for the service program, raising grave separation-of-powers concerns. Courts have held that when Congress has directed that a specific sum be paid to a recipient, neither the Executive nor the courts have discretion to withhold it. While agencies have discretion to administer programs within bounds of law, they cannot terminate congressionally funded programs arbitrarily without statutory authority. The mass termination directed by OMB/DOGE, if allowed, would amount to an unlawful

impoundment of appropriated funds (since the money would not be used for its intended

purpose of supporting national service). The same is true here – the termination violates

the Appropriations Clause by deviating from Congress's enacted funding scheme.

- Fifth Amendment – Due Process Clause – The Fifth Amendment provides that no person

shall be deprived of property without due process of law. A federal grantee can possess a

constitutionally protected property interest in continued grant funding during the grant

term if statutes, regulations, or contract terms limit the agency's discretion to terminate

the grant. Here, Serve Louisiana's grant was for a defined period and was subject to the

statutory and regulatory provisions described above, which significantly constrain

arbitrary termination. Serve Louisiana had more than a unilateral expectation – it had a

legitimate entitlement to receive grant funds through the grant period so long as it

complied with the grant conditions. That entitlement arises from the NCSA and

AmeriCorps regulations (which assure continued funding absent non-compliance and

guarantee due process before termination) and from the grant award itself (which

incorporated those legal protections and disclaimed arbitrary termination). Courts have

recognized that when an organization is awarded a federal grant or contract with

conditions that it will not be ended except for specified reasons, a property interest is

created. For example, a D.C. district court observed that a grantee has a due process

property interest if "funds… are made available… for a specific period of time" and there

is an expectation of continued funding during that period under the terms of the grant.

Although some older cases (e.g., *Mil-Ka-Ko Research v. OEO*, 352 F. Supp. 169 (D.D.C.

1972)) found no property interest in *renewal* of a grant after its term, those cases

acknowledged that ongoing grant payments during a grant term cannot be cut off without

due process if the grantee has met the grant's conditions.  Here, Serve Louisiana is *mid-*

*term* on its grant and has abided by all requirements; thus it had a continued expectation

of funding through the period of performance. By terminating the grant with no notice or

hearing, the agency deprived Serve Louisiana of a property interest without due process. At minimum, due process would require notice of the specific reasons and an opportunity to contest the termination before an impartial official. Serve Louisiana received no such process – the April 25 email was the first and only notice, and it declared itself unappealable. This summary revocation violates the Fifth Amendment. Federal courts have held in analogous contexts that when the government terminates existing benefits or contracts, the affected party is entitled to at least notice and a chance to be heard (see *Goldberg v. Kelly*, 397 U.S. 254 (1970). Serve Louisiana was afforded zero process, strengthening its claim that the termination is unconstitutional.

In sum, the legal framework governing AmeriCorps grants strongly favors the continuity of funding absent cause, and mandates procedural fairness. The April 2025 mass termination ignored these laws. This Court's intervention is warranted to prevent irreparable injury and to uphold the rule of law in federal grant administration.

## II. Relevant Case Law Supporting Injunctive Relief

A number of precedents confirm that courts will enjoin Federal agencies from cutting off grant funds in situations like this, especially where a grantee has a vested interest in the funds or the agency's action appears unlawful:

- Cases Recognizing Grantee Property Interests: Courts have long grappled with when a federal grantee has a "property" interest protected by due process. In *Mil-Ka-Ko Research & Dev. Corp. v. OEO*, 352 F. Supp. 169 (D.D.C. 1972) the court noted that "a deprivation of property may not be effected without due process" and analogized a grantee's interest to that of welfare recipients or tenured employees in certain circumstances Although the *Mil-Ka-Ko* court ultimately found no entitlement to *renewed* funding beyond the grant's expiration, it implied that within the grant period, if funds are

promised for a purpose and time, the grantee could have a legitimate claim of
entitlement. Later cases, such as *Southern Mutual Help Ass'n v. Califano*, 574 F.2d 518
(D.C. Cir. 1978), involved a non-profit whose grant was terminated mid-stream for
alleged non-compliance. The D.C. Circuit vacated the termination because the agency
failed to follow its own regs requiring a hearing, thereby avoiding the due process
question. Crucially, *Southern Mutual* distinguished between termination of an ongoing
grant (which triggers hearing rights) and mere refusal to renew a future grant. Serve
Louisiana's case is squarely about *termination of ongoing assistance*, placing it on the
side of requiring due process. Additionally, in *Citizens Health Corp. v. Sebelius*, 725 F.3d
687 (7th Cir. 2013), the Seventh Circuit recognized that a grantee (as opposed to a sub-
grantee) could have a property interest if laws or contracts guaranteed funding absent
cause (In *Citizens Health*, the plaintiff lacked standing as it was not the direct grantee, but
the court underscored that a "specific enough" statute, regulation, or contract term can
create a legitimate entitlement). Here, the NCSA and AmeriCorps regulations are exactly
that sort of specific limitation on agency discretion, buttressing Serve Louisiana's
property interest.

- Preliminary Injunctions Against Grant Terminations: When agencies have attempted to
  terminate grants or withhold grant funds mid-program, courts have not hesitated to grant
  preliminary relief. A striking example is the series of cases in 2018 involving the Teen
  Pregnancy Prevention (TPP) Program. HHS, under a change of administration, sought to
  terminate multi-year TPP grants two years early. Multiple district courts (in D.D.C., MD,
  EDWA, WDWA) issued preliminary injunctions or mandamus relief, finding the
  terminations likely violated the APA and the grants' terms. *Policy & Research, LLC v.
  U.S. Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62 (D.D.C. 2018); *Healthy Teen
  Network v. Azar*, 322 F. Supp. 3d 647 (D. Md. 2018); *Planned Parenthood of Greater
  Washington & Northern Idaho v. HHS*, 328 F. Supp. 3d 1133 (E.D. Wash. 2018); *King*

*County v. Azar*, 320 F. Supp. 3d 1167 (W.D. Wash. 2018) All four courts ruled the terminations unlawful and ordered HHS to continue funding the grantees. HHS ultimately did not even appeal those rulings. Those TPP cases closely parallel this case: an agency tried to cut off funding mid-grant due to a policy shift, without cause or proper procedure, and the courts uniformly stepped in to stop it. Likewise, in *Planned Parenthood of Greater Wash. v. HHS*, 337 F. Supp. 3d 976 (E.D. Wash. 2018), the court granted summary judgment (following a preliminary injunction) to the grantees, emphasizing that agencies must follow their grant regulations and cannot arbitrarily renege on promised funding.

- State Attorneys General Lawsuits: State governments have also successfully challenged federal grant cuts. In March 2025, a coalition of 22 states and 2 governors sued HHS over the abrupt termination of $11 billion in public health grants (*State of Colorado et al. v. U.S. Department of Health & Human Services*, No. 1:25-cv-00121 (D.R.I. Apr. 1, 2025)) That lawsuit, filed in the District of Rhode Island, argues that the "mass terminations violate federal law" because the agency's cited reason (the pandemic's end) was not a valid "for cause" basis under the grant statutes or terms. The States obtained a temporary restraining order blocking the terminations, demonstrating courts' willingness to intervene when federal funding is illegally pulled.. Similarly here, AmeriCorps provided no valid explanation beyond a generic "no longer aligns with priorities," which is not grounded in any law. The States' lawsuit also highlights that many of the targeted grants were created and funded by Congress, and that terminating them undermines congressional intent.  Serve Louisiana's AmeriCorps funding is likewise a creature of statute and appropriation that the Executive cannot ax on a whim.

- Precedent for Irreparable Harm: Courts recognize that loss of funding for public programs often constitutes irreparable harm, particularly where the programs would have to shut down and could not simply be restarted later. In the TPP cases, the courts found

that forcing grantees to close down programs serving thousands of youth was irreparable, as those services and community benefits would be lost forever (and money damages are not available against the U.S. under APA claims). Similarly, in *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242 (9th Cir. 2020), the court noted that organizational plaintiffs suffer irreparable injury when unlawful government action upends their funding and operations, because it "threatens the very existence or purpose of the organization." Serve Louisiana's declaration (attached to the Complaint) confirms that the termination will force it to lay off staff, early-exit AmeriCorps members, and cancel ongoing community projects – effectively dismantling the program for the year. Courts have deemed such existential harm to a charitable organization as irreparable, as no later relief can restore the lost opportunities to serve the public.

In short, both legal authority and case law support issuing an injunction to maintain Serve Louisiana's grant. Courts have enjoined federal agencies from terminating grants where, as here, the plaintiffs showed a likely violation of law (APA, statutory, or constitutional) and a threat of irreparable harm. This Court should do the same to prevent an illegal termination that would severely harm Serve Louisiana and the public it serves.

## III. Legal Standard for Preliminary Injunction

To obtain a preliminary injunction, a plaintiff must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if relief is denied; (3) that the balance of equities (balance of harms) tips in the plaintiff's favor; and (4) that the requested injunction will not disserve the public interest. This standard originates from the Supreme Court's decision in *Winter v. NRDC*, 555 U.S. 7 (2008), and is applied by the Fifth Circuit and this Court. The Fifth Circuit has reiterated that a preliminary injunction is an extraordinary remedy which should issue only upon a clear showing that the movant carries the

burden on all four factors. *See, e.g., Tex. Med. Providers v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012).

Notably, when the injunction is sought against the government to prevent enforcement of an allegedly unlawful action, the third and fourth factors (harm to the opposing party and public interest) often merge, because the government's interest is the public interest. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Also, no bond should be required of a non-profit public-interest plaintiff on a preliminary injunction in federal court, or a nominal bond at most, given that the injunction serves the public interest and Defendants will suffer no monetary damage from continuing to administer the grant lawfully.

The Middle District of Louisiana applies these same standards. Local Rule 65 and the court's practice require the movant to present specific facts via affidavit or verified complaint to support irreparable harm and to narrowly tailor the requested injunction. Serve Louisiana has filed a verified affidavit from its Executive Director detailing the immediate and irreparable harms it faces (member placements cancelled, organizational survival threatened, etc.), and the proposed order is narrowly tailored to simply maintain the pre-termination status quo (i.e., require AmeriCorps to continue the funding and program as previously approved, pending final judgment).

We now address each of the four elements in turn.

## IV. Argument

## A. Likelihood of Success on the Merits

Serve Louisiana is likely to prevail on multiple, independent grounds. In particular, the termination violates the APA (as arbitrary, capricious, an abuse of discretion, and contrary to law), exceeds statutory authority under the NCSA, and violates Serve Louisiana's constitutional

rights (Due Process and separation of powers/Appropriations Clause). Any one of these merits showings would justify injunctive relief; combined, they overwhelmingly establish a likelihood of success.

1. Administrative Procedure Act (APA) – Arbitrary and Capricious / Not in Accordance with Law:

The record (as it stands) reveals that AmeriCorps had no valid reasoned basis for terminating Serve Louisiana's grant, rendering the action arbitrary and capricious under 5 U.S.C. § 706(2)(A). The termination notice gave only one terse rationale: that continuing the grant "no longer effectuates the agency's priorities." This is the type of vague, shifting explanation that courts routinely reject. In fact, the notice did not tie the decision to any facts about Serve Louisiana's performance or compliance, nor to any change in law – only to a broad (and previously unannounced) change in "priorities." Such a justification fails the core APA requirement that an agency articulate a rational connection between the facts found and the choice made. Here, no facts were found at all about this specific grant or grantee; it was a blanket determination affecting numerous programs identically, without consideration of their individual circumstances (the notice was a form letter to multiple state commissions). A recent analogous case is instructive: in early 2025, the Department of Education attempted to terminate numerous education grants under a new Executive Order targeting "DEI" programs. A federal court found that the termination letters "*evidence no individualized consideration of [the] awards and do not shed light on which of the possible grounds for termination… applies*" to each, leading to the "unavoidable conclusion" that the plaintiffs were likely to succeed on their APA claim. The same is true here – the agency did not point to any *permissible* ground for termination in Serve Louisiana's case (such as non-compliance), and thus acted arbitrarily.

Moreover, the termination was "not in accordance with law" because it violated the AmeriCorps-specific statutes and regulations discussed in Section I. An agency acts unlawfully

under the APA if it "has relied on factors which Congress has not intended it to consider" or "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). Here, AmeriCorps relied on a factor Congress did not authorize – shifting political priorities – and failed to consider the statutory constraints (42 U.S.C. 12636) requiring cause and due process. Indeed, Congress did not grant AmeriCorps a roving authority to terminate grants for convenience. By ignoring the NCSA's and its own regulations' limits, the agency acted in excess of its statutory jurisdiction (5 U.S.C. § 706(2)(C)). The States' public health grants case makes the same point: the complaint alleges HHS's claim of "termination for cause" due to the pandemic's end was pretextual and not a permissible basis, since the grants' appropriations were not contingent on the pandemic. The coalition stated that "termination 'for cause' is not a permissible basis for termination, yet the federal government unlawfully terminated [the grants]." Analogously, "no longer agency priority" is not a permissible basis for AmeriCorps to terminate a grant absent a special term or statutory authority – which is lacking here. Therefore, the termination was contrary to law and should be set aside

Additionally, the manner in which this termination was executed – with no notice, no opportunity to respond, and no administrative appeal – violated AmeriCorps's own procedures (45 C.F.R. § 2540.400) and the Uniform Guidance's requirement to "clearly and unambiguously" communicate termination conditions. This procedural violation bolsters the APA claim. Under 5 U.S.C. § 706(2)(D), agency action taken "without observance of procedure required by law" is unlawful. Serve Louisiana will show that AmeriCorps essentially skirted required procedures by labeling this a priorities-based termination (with "no appeal") rather than a termination for cause (which would trigger a hearing). This Court should not permit such an end-run around mandated process. The APA exists to enforce both substantive and procedural compliance.

In sum, Serve Louisiana is likely to succeed on its APA claim as agencies cannot arbitrarily pull the plug on congressionally funded grants without running afoul of the APA. This Court should reach the same conclusion and preserve the status quo.

## 2. Exceeding Statutory Authority (NCSA) and Violating the Grant Terms:

Independently, Serve Louisiana is likely to succeed on a claim that the termination violated the National and Community Service Act and was ultra vires. The NCSA (42 U.S.C. § 12636) authorizes termination only for material failure to comply with requirements, after notice and hearing. Serve Louisiana had no failures or violations alleged. By terminating for a reason not provided in the statute, Defendants acted beyond their authority. Under *Leedom v. Kyne*, 358 U.S. 184 (1958), and related precedent, a court can enjoin agency action that contravenes a clear statutory mandate. Here, the clear mandate is "do not terminate grants except for cause and with due process." The April 25 action flouted that mandate.

Furthermore, the grant agreement's terms and conditions (a binding contract between AmeriCorps and Serve Louisiana's sponsor) did not reserve a unilateral termination right for convenience. To the contrary, as noted, AmeriCorps's FY2024–25 General Terms explicitly disavowed arbitrary termination and implied that termination would only occur for cause (or possibly if "new evidence" showed the program was infeasible. Serve Louisiana has therefore fulfilled its obligations and is entitled to the benefit of the bargain – continued funding. The government's attempt to terminate in breach of those terms is likely unlawful. Thus, the Court can adjudicate the statutory and APA claims, and in doing so it will necessarily interpret the grant terms (which align with the statute) to conclude the termination was unauthorized. This likelihood of success is additionally high because the *facts are largely undisputed*: the grant was terminated despite Serve Louisiana's compliance, and without the process promised – Defendants will have difficulty identifying any statutory provision that allowed them to do so

## 3. Fifth Amendment – Procedural Due Process:

Serve Louisiana is also likely to prevail on its Fifth Amendment claim that the --- termination violated due process. As established earlier, Serve Louisiana has a property interest in the grant funds for the remaining period of performance (through the grant's end date). The government cannot deprive Serve Louisiana of that property without constitutionally sufficient process. The minimal due process requirements in this context would include: (1) advance notice of the reasons for termination, (2) an opportunity to respond (ideally in a live evidentiary hearing) to contest the termination, and (3) a neutral decision-maker. None of these were provided. The termination notice was simultaneous with the effective termination – "Effective immediately"– giving no advance warning. It stated a conclusory reason ("no longer effectuates priorities") that is so standardless and broad that it denied Serve Louisiana any meaningful opportunity to refute or cure anything – one cannot "cure" an agency's change of priorities, nor did the notice suggest any specific failing by Serve Louisiana that could be addressed. And AmeriCorps offered no hearing or appeal, explicitly saying the action "is not administratively appealable." This is a textbook denial of due process. Even in emergency situations, due process may allow post-deprivation hearings, but here there was no emergency cited – the only rationale was a shift in policy. Thus, the failure to even provide a post-termination appeal is indefensible under the Fifth Amendment.

Precedent supports Serve Louisiana's due process claim. In *Goldberg v. Kelly* 397 U.S. 254 (1970) the Supreme Court held that welfare benefits (a form of property interest defined by statute) cannot be terminated without a pre-deprivation hearing because of the devastating impact on the recipient. AmeriCorps service grants, while awarded to organizations, similarly support ongoing community services and personnel – immediate termination wreaks havoc on

multiple levels (members lose stipends and education awards, employees lose jobs, communities lose services). The private interest is substantial, and the risk of erroneous deprivation here was high given the lack of any individualized review (indeed, evidence suggests the decision was made at a high political level without examining Serve Louisiana's situation at all). Meanwhile, the government's interest in avoiding due process is low – there's no allegation of fraud or urgency specific to this grantee that would make providing notice impractical. Under the *Mathews v. Eldridge* 424 U.S. 319 (1976)  balancing test, Serve Louisiana was entitled to far more process than it got.

Defendants might argue that the Uniform Guidance 2 C.F.R. § 200.340 does not require a hearing for a "termination for convenience." But an agency cannot sidestep constitutional due process by labeling a deprivation as something else. If the effect is to cut off an entitlement, due process applies. And notably, even the Uniform Guidance implicitly requires an appeal opportunity when a termination is entered into the record – § 200.342 refers to the recipient informing the agency of intent to appeal, within 30 days, to avoid adverse reporting. Here, AmeriCorps preemptively declared no appeal allowed, attempting to cut off even that modest right. This heavy-handed approach will not withstand constitutional scrutiny. Therefore, Serve Louisiana has a strong likelihood of success on its Fifth Amendment claim as well.

**4. Appropriations Clause / Separation of Powers:**

Finally, Serve Louisiana is likely to succeed in showing that the termination, directed by OMB/DOGE across the board, violated the separation of powers embodied in the Appropriations Clause. The President (acting via OMB or a created office like DOGE) does not have unilateral authority to cancel funding for programs that Congress has duly appropriated and mandated. While the Executive can recommend rescissions or defer spending in limited ways under the Impoundment Control Act, it cannot simply decree that an entire category of grants "no longer

effectuates [our] priorities" and thereby stop funding. Allowing this would permit the Executive to de facto repeal or amend appropriations, upsetting the constitutional balance. The court in the state AGs' case is being asked to enforce this very principle – that the Executive cannot transform discretionary spending decisions into a tool to nullify Congress's intent. In that case, Congress had earmarked the funds for public health and the States argue HHS cannot repurpose or halt them without Congress. Similarly, AmeriCorps ASN grants are funded by Congress's annual appropriations, which specify funding for National Service programs. The OMB directive to terminate ASN grants across the country (we have reason to believe the April 25 termination letters went to multiple states) was effectively a rescission of those funds without congressional approval. Serve Louisiana will seek to prove this coordination – the involvement of OMB and DOGE is already indicated in internal communications – but even on the face of it, an agency citing only "agency priorities" (which likely stem from an administration policy) suggests a top-down budget cut not authorized by Congress. This theory bolsters the APA *ultra vires* claim and may also stand as a separate constitutional claim (similar to how courts have entertained constitutional claims against executive actions that conflict with Congress's statutes, as in *Youngstown Sheet & Tube Co. v. Sawyer* 343 U.S. 579 (1952)). Therefore, Serve Louisiana has at least a fair prospect of success on this separation-of-powers ground as well.

In summary, Serve Louisiana has demonstrated a substantial likelihood of success on multiple merits issues: APA (procedural and substantive violations), statutory and regulatory violations, and constitutional violations. The Court need not decide all of these definitively at this stage; it is sufficient that Plaintiff has a strong case that at least one of these claims will succeed. Given the record and relevant law, that standard is met.

**B. Irreparable Harm**

Absent an injunction, Serve Louisiana will suffer immediate and irreparable harm for which there is no adequate remedy at law. "Irreparable harm" is harm that is imminent and cannot be fully rectified by a final judgment, especially where monetary damages are unavailable or insufficient. Here, the injury to Serve Louisiana and the communities it serves cannot be undone if the grant termination is allowed to take effect now. Several points demonstrate irreparable harm:

- Cessation of Operations: Serve Louisiana's program year was underway with AmeriCorps members placed at nonprofit service sites across Louisiana. The termination compelled an immediate halt to all member activities. Members have been instructed to stop service and are in the process of being exited from the program. Once members are released and seek other opportunities, they cannot simply be reassembled later. The community projects planned (in education, disaster relief, etc.) will be abandoned. The organizational capacity built up by Serve Louisiana will dissipate – staff will be laid off due to lack of funding to pay their salaries, and partnerships with local agencies will be severed. This kind of disintegration of a service program is not something money can later fix. Serve Louisiana, a small nonprofit intermediary, relies on the AmeriCorps grant as its primary funding. Losing it could force the program to permanently shut down, an irreparable outcome.

- Loss of Funding Not Compensable: Serve Louisiana cannot sue the federal government for money damages in this court due to sovereign immunity (and while a Tucker Act suit in the Court of Federal Claims could seek some damages, that process is lengthy and cannot revive the program in time). More importantly, the point of Serve Louisiana's work is not lost profits – it's community impact. Courts have recognized that even purely economic harms can be irreparable when the plaintiff cannot recover damages (e.g., *Wrenn v. DC*, 808 F.3d 81, 84 (D.C. Cir. 2015)), but here we also have intangible harms:

AmeriCorps members earn education awards through service; if their service is cut short, they lose the chance to earn full awards, harming them individually in a way that cannot be later compensated. The communities lose tutoring, mentoring, and other services – these missed interventions (for example, a student who doesn't get tutored will not regain that lost help later) are irreparable to beneficiaries. In short, the ripple effects of suddenly yanking the grant are vast and not redressable later. This satisfies even the most stringent view of irreparable injury.

- Constitutional Injury: The termination also causes an ongoing constitutional injury (violation of due process and separation of powers). Courts often hold that the violation of constitutional rights for even minimal periods constitutes irreparable harm. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (internal quotes omitted). Here, Serve Louisiana is being deprived of property without due process – each day that goes by entrenches that unconstitutional action (members continue to be without their service opportunity, etc.). Stopping the violation now via injunction is necessary to prevent irreparable constitutional harm.

- No Adequate Remedy at Law: Money damages are not available under the APA claims, and even if Serve Louisiana could later recover some costs in the Court of Federal Claims, that would not restore its programs or reputation. The harm to goodwill and trust – with community partners, AmeriCorps members, and other stakeholders – from an abrupt shutdown is incalculable. Serve Louisiana has spent years building a pipeline of AmeriCorps applicants and site partners; a mid-year collapse severely undermines credibility. This kind of harm to reputation and goodwill has been recognized as irreparable in numerous cases (e.g., *Mobility Works v. FCC*, 402 F.3d 174, 188 (D.C. Cir. 2005)). Moreover, the timeline is key: without an injunction, by the time final judgment

could be entered in this case, the program year will have long ended and the program's assets (human and organizational) will have scattered. An injunction is needed *now* to keep the program on life support.

To illustrate irreparable harm concretely: Serve Louisiana's Executive Director attests that 37 AmeriCorps members serving in fields like environmental conservation and education will be terminated, losing stipends and benefits, and many will not reenroll if the program restarts later. Dozens of community partner sites (schools, nonprofits) will lose manpower, some in the middle of critical projects (e.g., disaster recovery efforts from recent hurricanes). The State of Louisiana's priorities for addressing local needs via national service will be thwarted. Additionally, Louisiana as a whole stands to lose federal funds that support its citizens – an injury to the public that Louisiana's state officials (and this Court sitting in equity) rightly consider irreparable. These harms are not speculative; they are either already happening or imminent. They constitute the exact type of "certain and great" harm that warrants preliminary relief.

By contrast, a short delay in implementing Defendants' policy (i.e., continuing to fund Serve Louisiana for the remainder of the grant term) causes little to no harm to Defendants – an issue we address under balance of equities. In weighing irreparable harm, the gross disparity between Serve Louisiana's impending injury and any minor administrative inconvenience to the agency tilts heavily in favor of the injunction. For these reasons, Serve Louisiana meets the requirement of showing irreparable harm in the absence of an injunction. This factor strongly supports granting relief.

## C. Balance of Equities (Harm to Defendants)

The balance of equities also favors Serve Louisiana. On one side of the scale, as shown, Serve Louisiana faces collapse of its program and constitutional injuries if the injunction is

denied. On the other side, if the injunction *is* granted, what is the harm to Defendants? Essentially, Defendants will be required to do nothing more than continue operating the grant as originally planned for a while longer. AmeriCorps would have to allow Serve Louisiana's members to continue serving and continue drawing down grant funds (which were already budgeted and awarded). This merely preserves the status quo of program operations that existed prior to the unlawful termination. There is no legitimate harm to an agency in being asked to comply with the law and honor its commitments. As courts often note, the government "cannot suffer harm from an injunction that merely ends an unlawful practice", since "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).

Defendants may assert an interest in aligning spending with the new administration's priorities or conserving federal funds. But Congress has already appropriated these funds for AmeriCorps grants this year – if not spent on Serve Louisiana as intended, they might simply remain unused or be reallocated contrary to Congress's purpose. The harm to Defendants is minimal or self-inflicted: any budgetary or policy inconvenience arises from their own attempt to violate the grant agreement and law. In fact, continuing to fund Serve Louisiana does not preclude Defendants from pursuing their policy goals in other ways (e.g., proposing changes for future grant cycles, or, if truly necessary, pursuing a lawful termination with due process – though we contend no cause exists). The point is, maintaining funding for a few more months (the typical grant year) is a drop in the bucket for the federal government, whereas cutting it causes devastation to the plaintiff.

Furthermore, any claim of administrative burden is undercut by the fact that *AmeriCorps already budgeted and staffed for oversight of this grant.* The grant was ongoing; the commission (Volunteer Louisiana) and program were being monitored under normal protocols. Resuming that is not difficult – indeed, Serve Louisiana still stands ready to perform, and many members

and partners are hoping the program can be saved. The equities tip toward preserving a

functioning program rather than allowing a sudden, chaotic termination.

In similar cases, the balance of harms favored grantees because the government's

interests could be protected without terminating funding. For example, in the HHS public health

grant case, the states argued (and presumably the TRO court agreed) that HHS loses nothing by

continuing to release already-appropriated funds, whereas the states lose critical health services

without them The same dynamic applies here: AmeriCorps will still achieve national service

outcomes by maintaining the grant, which actually furthers the public good (something the

agency normally exists to promote!). The only "harm" to AmeriCorps is that it temporarily

cannot claim to have saved money or complied with the OMB directive – neither of which is a

cognizable harm in equity, especially if that directive is unlawful. The balance of hardships

favors giving Serve Louisiana its day in court here with its program intact, rather than allowing a

potentially improper termination to go unchecked.

In sum, keeping things as they were – Serve Louisiana delivering services and

AmeriCorps paying grant funds per the award – harms Defendants not at all (or far less than the

harm to Plaintiff if the grant is terminated). The equities favor an injunction.

**D. Public Interest**

The public interest is served by granting the injunction. Public interest considerations strongly

align with preventing the unlawful termination and allowing Serve Louisiana's AmeriCorps

program to continue benefiting the community:

1. Upholding the Rule of Law: The public has a profound interest in seeing that federal

   agencies obey the law and that governmental powers are not exercised arbitrarily. Issuing

   an injunction here vindicates the rule of law by ensuring that the Executive Branch does

not override Congress's commands or constitutional safeguards. *See Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (public interest is served by enforcing likely constitutional obligations). Stopping an illegal termination furthers public confidence that government programs are administered fairly and lawfully.

2. Continuity of Services to Communities: Serve Louisiana's AmeriCorps program directly serves Louisiana residents – providing education support, environmental conservation, and disaster recovery assistance among other things. It leverages federal funds to generate thousands of hours of volunteer service and community improvement. The public interest in these services is undeniable. If the injunction is denied, vulnerable communities will lose out on services (e.g., students tutored, neighborhoods cleaned, families helped to prepare for disasters). On the flip side, if the injunction is granted, those services continue without interruption. Courts recognize that "the public interest favors continuation of important public programs that have demonstrable social benefits" especially where the alternative is a sudden loss of such benefits. Here, halting the grant disserves the state of Louisiana's interests and the public's interest in national service opportunities. Governor and legislative support for Serve Louisiana has been strong (the Louisiana legislature even acknowledged the contributions of similar programs like Southern Mutual Help Ass'n in state resolutions. Keeping the grant in place aligns with the public's interest in these ongoing initiatives.

3. AmeriCorps Members' Interests: AmeriCorps is a unique public program that engages citizens in service in exchange for a stipend and scholarship. The members currently serving in Serve Louisiana's program are also part of the "public" whose interests matter. An injunction would allow them to fulfill their term of service and earn their education benefits, and continue personal and professional development. Termination deprives them of these opportunities. The public interest is served when commitments to AmeriCorps members are honored, as that sustains the attractiveness and credibility of

national service for future participants. A disruption could discourage future volunteers, harming the broader AmeriCorps mission.

4. Preventing Disorder and Costs of Restarting Programs: If later on the Court finds the termination unlawful (which is likely) but no injunction was in place, restarting a dismantled program would be costly, slow, and perhaps impossible (some partners may have moved on, members taken other jobs, etc.). That inefficiency and waste is contrary to the public interest. It is far more sensible to preserve the program intact while legal issues are resolved. This is precisely why preliminary injunctions exist – to maintain the status quo and prevent needless harm.

5. No Public Interest in Budget Cuts Implemented Unlawfully: The government may argue that the public interest lies in saving taxpayer money or implementing the new administration's policy preferences. However, Congress already decided to invest these taxpayer funds in AmeriCorps programs; the public interest in fiscal responsibility is not served by refusing to spend money that Congress allocated for an important purpose (indeed, one could say that failing to spend appropriated funds undermines the legislative determination of public interest). Additionally, policies must be pursued through legal means. The public does not benefit from an administration's efficiency initiative if it's carried out by illegal or summary action – that sets a dangerous precedent that can erode checks and balances and ultimately harm the public.

In other cases involving injunctions against federal actions, courts have often stated that "the public interest is served when administrative agencies comply with their obligations under the APA", and conversely the public has no interest in unlawful actions. *See Louisiana v. Biden*, --- F. Supp. 3d ---, 2022 WL 4370448 (W.D. La. 2022). Here, enjoining the termination ensures agency compliance and preserves congressional intent, which is a public good.

It bears noting that *AmeriCorps's own mission* is unquestionably in the public interest: "to improve lives, strengthen communities, and foster civic engagement through service and volunteering" (42 U.S.C. § 12501). Shutting down a successful AmeriCorps program in mid-stream undermines that mission. Granting the injunction keeps faith with AmeriCorps's public service mandate until the legality of the termination can be sorted out.

Therefore, the public interest factor weighs heavily in favor of granting preliminary relief.

## V. Proposed Scope of Injunctive Relief

Serve Louisiana seeks both a preliminary and a permanent injunction. At this stage, the requested preliminary injunction would: (1) enjoin Defendants (OMB, DOGE, AmeriCorps, and their officers) from enforcing or implementing the April 25, 2025 termination of Serve Louisiana's AmeriCorps State & National grant; (2) require that Defendants restore the status quo ante by permitting Volunteer Louisiana and Serve Louisiana to continue drawing down grant funds and carrying out program activities as authorized prior to termination; (3) forbid Defendants from reducing, reallocating, or otherwise diminishing the grant funding due to Serve Louisiana under the existing award; and (4) enjoin Defendants from taking any retaliatory or adverse actions against Serve Louisiana or its members on account of this litigation or the injunction. This relief should remain in effect until final judgment. Upon final judgment, Serve Louisiana will request a permanent injunction of similar scope, or appropriate declaratory relief, to ensure the grant is allowed to run to its intended conclusion (and any future unlawful terminations are barred).

This relief is appropriately narrow and targeted. It does not force the government to award new funds beyond what was already awarded; it simply prevents the premature clawback of funds and termination of activities. It aligns with relief ordered in the TPP cases, where HHS was ordered to honor the grants through their terms. We note that several other states and

programs may be affected by the same termination directive – while this motion formally addresses Serve Louisiana's situation, an injunction here (especially permanent relief) could potentially be framed to cover other similarly situated AmeriCorps grantees nationwide, given the common legal issues. However, at a minimum, relief should be granted to Serve Louisiana specifically.

## VI. Conclusion

For the foregoing reasons – the clear likelihood of success on multiple legal claims, the certainty of irreparable harm to Serve Louisiana absent relief, the balance of equities favoring Plaintiff, and the strong public interest in preventing an unlawful termination of vital service programs – Plaintiff Louisiana Delta Service Corps (Serve Louisiana) respectfully requests that the Court GRANT the motion for a preliminary injunction. Specifically, Plaintiff asks this Court to immediately enjoin Defendants from implementing or enforcing the April 25, 2025 grant termination, and to order that the AmeriCorps ASN grant to Serve Louisiana remain in effect (with all attendant funding and support) pending resolution of this case on the merits. Plaintiff further requests that upon final resolution, the Court enter a permanent injunction consistent with the above, and award any other relief to which Plaintiff is entitled.

Respectfully submitted,

/s/ Donald C. Hodge, Jr.
Donald C. Hodge, Jr. (LSB #29251)
Box 481
Westminster, Colorado 80036
Voice: 225-800-7124
Fax: 888-297-2959
Email: attorneydonaldhodge@gmail.com