**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**LOUISIANA DELTA SERVICE CORPS**

                                                    **CIVIL ACTION**

**VERSUS**

                                                    **NO. 25-378-JWD-RLB**

**CORPORATION FOR NATIONAL AND**
**COMMUNITY SERVICE ET AL.**

**RULING AND ORDER**

This matter comes before the Court on the *Motion for Preliminary Injunction* (Doc. 9) and

accompanying *Memorandum of Law in Support of Motion for Preliminary Injunction* (Doc. 9-2)

(collectively, "*Motion for Preliminary Injunction*") filed by Plaintiff Serve Louisiana ("Plaintiff"

or "Serve Louisiana"). Plaintiff seeks to enjoin defendants Corporation for National and

Community Service (d/b/a AmeriCorps Agency) ("AmeriCorps"), United States Department of

Government Efficiency ("DOGE"), and Office of Management and Budget ("OMB") (collectively,

"Defendants" or "Government") from terminating any current AmeriCorps grants issued to

Plaintiff. (Doc. 9 at 1.) Defendants then filed their *12(b)(1), (6) Motion to Dismiss by the United*

*States of America* (Doc. 28) and the accompanying *Memorandum in Support of Rule 12(b)(1), (6)*

*Motion to Dismiss by the United States of America* (Doc. 28-2) (collectively, "*Motion to Dismiss*").

They also filed *Federal Defendants' Memorandum in Opposition to Louisiana Delta Service*

*Corps' Motion for Preliminary Injunction* (Doc. 29) ("*Defs. Opposition*"). Plaintiff responded by

filing what it styled as a *Reply to Memorandum in Support of Plaintiff's Motion for Preliminary*

*Injunction* (Doc. 31) ("*Pl. Reply*"). Defendants then filed their *Reply in Support of Motion to*

*Dismiss Pursuant to Rule 12(b)(1), (6) by the United States of America* (Doc. 35) ("*Def. Reply*").

In addition, the parties filed simultaneous briefing pursuant to the Court's request at the status

conference held May 22, 2025. (*See* Doc. 23.) Plaintiff filed a *Notice of Funding Explanation* (Doc.

24) ("*Pl. Notice*"), and Defendants filed *Corporation for National and Community Service's Notice Under the Court's May 22, 2025, Order* (Doc. 25) ("*Defs. Notice*"). A hearing was held on June 18, 2025, to address Plaintiff's *Motion for Preliminary Injunction* and Defendants' *Motion to Dismiss*. (Doc. 39.) Oral arguments were first heard on the *Motion to Dismiss*, then the *Motion for Preliminary Injunction*. The Court has carefully considered the arguments presented at the hearing and in the briefs. For the reasons stated below, the Court will grant in part and deny in part Defendants' *Motion to Dismiss* and grant the *Motion for Preliminary Injunction*.

## I.    BACKGROUND

Plaintiff Serve Louisiana is a non-profit recipient of AmeriCorps grant funds. (Doc. 1-2 at 1.)[1] As of April 30, 2025, it "employ[ed] 37 AmeriCorps members who serve in 18 nonprofits and grassroots organizations in Baton Rouge and New Orleans." (*Id.*) Serve Louisiana's partners include, among others, the East Baton Rouge Parish Library, the Boys and Girls Clubs of Acadiana, Orleans Public Defenders, Coalition to Restore Coastal Louisiana, Pontchartrain Conservancy, community development organizations, and organizations dedicated to improving maternal, fetal, and infant mortality rates. SERVE LOUISIANA, https://www.servelouisiana.org (last visited June 24, 2025). On April 25, 2025, Serve Louisiana received an email signed by Jennifer Bastress Tahmasebi, identified as the Interim Agency Head for AmeriCorps. (Doc. 1-1 at 2.) The email terminated Serve Louisiana's AmeriCorps award "[e]ffective immediately . . . because it has been determined that the award no longer effectuates agency priorities." (*Id.* at 1.) It stated that award recipients "must immediately cease all award activities." (*Id.*) The email also stated that this constituted "a final agency action and is not administratively appealable." (*Id.*) According to Serve

---

[1] In the *Complaint*, Plaintiff identifies Serve Louisiana as the state service commission for Louisiana; however, in the affidavit of Lisa Moore, the Executive Director of Serve Louisiana, Ms. Moore attests that Serve Louisiana is a recipient of funds administered by Volunteer Louisiana, which she identifies as the state service commission for Louisiana. (Doc. 1-2 at 1.)

Louisiana, this termination would cause "all of the positions held by [the 37] AmeriCorps members [to] be terminated immediately, causing significant disruption to [Serve Louisiana's] programs and the communities [it] serve[s]." (Doc. 1-2 at 2.) Serve Louisiana attests that these members "will be forced to leave their programs with just 3 months left of their 11 month contract[,]" no longer receiving their twice monthly living allowance disbursements, educational awards, and health insurance. (*Id.*) At the same time, Plaintiff claims, its "18 nonprofit partners will lose 3 months of a full time member serving 40 hours per week[]" and "$3,000 in non-refundable cash match that has been used to pay member's [sic] living allowance, health insurance, and workers compensation insurance." (*Id.*) Plaintiff attests that Serve Louisiana itself will see "two full time staff members . . . lose grant funded salaries and health insurance." (*Id.*) Serve Louisiana asserts that it had been awarded $701,000 in AmeriCorps grant funding for fiscal year 2024. (*Id.* at 1.) Serve Louisiana represents that the grant terminated by this action was awarded for a term lasting from September 1, 2024, to August 31, 2025. (Doc. 24 at 1.) Plaintiff claims that it "has applied for Year 1 funding in a new three-year cycle beginning [September 1,] 2025." (*Id.*)

Defendants, on the other hand, argue that Plaintiff is a subgrantee of a "grant administered by Volunteer Louisiana." (Doc. 28-2 at 3.) They characterize the relationship between Plaintiff and AmeriCorps as a contractual one. (*Id.* at 1.) In addition, Defendants characterize the funding as being awarded on a "standard three-year grant period" that began "on August 1, 2024, and was scheduled to end on July 31, 2027[.]" (Doc. 25 at 1.) They state that "grants are awarded throughout the year," and "the grant year for the subject grant agreement ran from August 1st to July 31st of each year for the three-year period ending on July 31, 2027." (*Id.* at 2.) Defendants represent that "if the Court provides any injunctive relief, such relief would extend past the fiscal year and potentially until July 31, 2027, when the subject grant agreement ends." (*Id.*) Defendants contend

that "[a]s of April 25, 2025, the balance of federal funding not drawn from the Payment Management System for Serve Louisiana's grant 24AFGLA001 was $1,594,133.48[.]" (Doc. 28-3 at 2.)

## A. Statutory Provisions

The Corporation for National and Community Service, operating as AmeriCorps, is statutorily established by Congress to "administer the programs established under the national service laws." 42 U.S.C. §§ 12651 *et seq.*; 45 C.F.R. § 2500.2. It was created by the National and Community Service Trust Act of 1993 with a stated mission "to improve lives, strengthen communities, and foster civic engagement through service and volunteering." 45 C.F.R. §§ 2500.1, 2500.3.

AmeriCorps is led by a Chief Executive Officer ("CEO"), who is "appointed by the President, by and with the advice and consent of the Senate[,]" 42 U.S.C. § 12651c(a), and by a bipartisan Board of Directors ("Board"), who are likewise "to be appointed by the President, by and with the advice and consent of the Senate[,]" *id.* § 12651a(a)(1)(A). "The Board shall have responsibility for setting overall policy for" AmeriCorps, § 12651b(g), including: reviewing the strategic plan and budget proposal, § 12651b(g)(1); reviewing and approving the proposals of the CEO for "grants, allotments, contracts, financial assistance, payment, and positions[,]" § 12651b(g)(2), as well as for "regulations, standards, policies, procedures, programs, and initiatives[,]" § 12651b(g)(3); and "review[ing], and advis[ing] the Chief Executive Officer regarding, the actions of the Chief Executive Officer with respect to the personnel of the Corporation, and with respect to such standards, policies, procedures, programs, and initiatives as are necessary or appropriate to carry out the national service laws[,]" § 12651b(g)(5)(A). The CEO is required to "prepare and submit to the Board a proposal with respect to such grants and

4

allotments, contracts, other financial assistance, and designation of positions as approved national service positions, as are necessary or appropriate to carry out the national service laws[,]" § 12651d(b)(2)(A); and to "make such grants and allotments, enter into such contracts, award such other financial assistance, make such payments (in lump sum or installments, and in advance or by way of reimbursement, and in the case of financial assistance otherwise authorized under the national service laws, with necessary adjustments on account of overpayments and underpayments) . . . as are necessary or appropriate to carry out the national service laws[,]" after approval from the Board, § 12651d(b)(2)(B). The CEO's statutory duties also state that it shall "suspend or terminate payments and positions described in paragraph (2)(B), in accordance with [42 U.S.C. § 12636,]" § 12651d(b)(6). 42 U.S.C. § 12636 sets forth notice, hearing, and grievance procedures.

In addition, AmeriCorps is statutorily authorized to "make grants to States, subdivisions of States, territories, Indian tribes, public or private nonprofit organizations, and institutions of higher education for the purpose of assisting the recipients of the grants . . . to carry out full- or part-time national service programs, including summer programs, described in" the National and Community Service Act ("NCSA"). §12571. Section 12572 describes a number of different qualifying corps, including Education Corps, § 12572(a)(1); Healthy Futures Corps, § 12572(a)(2); Clean Energy Service Corps, § 12572(a)(3); Veterans Corps, § 12572(a)(4); and Opportunity Corps, § 12572(a)(5). In addition, § 12572 describes national service programs that may receive federal grants, including "community service program[s] designed to meet the needs of rural communities," § 12572(b)(2)(A); programs "that engage[] participants in public health, emergency and disaster preparedness, and other public safety activities[,]" § 12572(b)(2)(B)(i); programs that engage in the mentorship or training of disadvantaged or at-risk youth, § 12572(b)(2)(C), (D);

programs that work with court-involved youth and adults to reduce recidivism, § 12572(b)(2)(E), (F); programs that provide job training and opportunities to rural communities, § 12572(b)(2)(G); programs that provide mentorship to foster youth, § 12572(b)(2)(H); and any other "[s]uch [] national service programs addressing unmet human, educational, environmental, or public safety needs as the Corporation may designate[,]" § 12572(b)(2)(I). The NCSA also provides for various other "program models" for national service corps programs, which may include programming for veterans, college campuses, and health care providers. § 12572(c).

The NCSA outlines how AmeriCorps shall give priority to different service corps, stating that it "may give priority to eligible entities that propose to provide support for participants who, after completing service under this section, will undertake careers to improve performance on health indicators described in" the NCSA, § 12572(e)(1)(A); that it "shall give priority to eligible entities that propose to carry out national service programs in medically underserved areas (as designated individually, by the Secretary of Health and Human Services as an area with a shortage of personal health services)[,]" § 12572(e)(1)(B); and that in the case of Clean Energy Corps, AmeriCorps "shall give priority to eligible entities that propose to recruit individuals for the Clean Energy Service Corps so that significant percentages of participants in the Corps are economically disadvantaged individuals, and provide to such individuals support services and education and training to develop skills needed for clean energy jobs for which there is current demand or projected future demand[,]" § 12572(e)(2).

In addition, the NCSA outlines how AmeriCorps shall establish national service priorities, stating "[i]n order to concentrate national efforts on meeting human, educational, environmental, or public safety needs and to achieve the other purposes of this chapter, the Corporation, after reviewing the strategic plan approved" by the Board "shall establish, and may periodically alter,

6

priorities regarding the types of national service programs and corps to be assisted under" the statutory allotments described in 42 U.S.C. § 12581 "and the purposes for which such assistance may be used." § 12572(f)(1)(A). However, the NCSA specifically requires that AmeriCorps "shall provide advance notice to potential applicants of any national service priorities to be in effect under this subsection for a fiscal year[,]" describing any changes in the priorities and which service programs are eligible for priority consideration for the next round of funding distribution. § 12572(f)(2). States are also required to establish and periodically alter their priorities for AmeriCorps programs to be administered by state commissions, described below, which are to be reviewed by AmeriCorps. § 12572(f)(1)(B). State priorities may be different than those of AmeriCorps. 45 C.F.R. § 2522.460.

States must "maintain a State Commission on National and Community Service" in order "to be eligible to receive a grant or allotment under" 42 U.S.C. § 12521 *et seq.* or § 12571 *et seq.* "or to receive a distribution of approved national service positions under" 42 U.S.C. § 12521 *et seq.*, § 12638(a)(1); they may also "may apply to the Corporation for approval to use an alternative administrative entity to carry out the duties otherwise entrusted to a State Commission under this chapter[,]" § 12638(a)(2). The State Commission's duties include "[a]dministration of the grant program in support of national service programs that is conducted by the State using assistance provided to the State under [42 U.S.C. § 12571], including selection, oversight, and evaluation of grant recipients." § 12638(e)(9). "Upon approval of a State plan submitted under subsection (e)(1)," which requires that such a plan must be developed through an open and public process, "the Chief Executive Officer may waive for the State, or specify alternatives for the State to, administrative requirements (other than statutory provisions) otherwise applicable to grants made to States under the national service laws, including those requirements identified by the State as

7

impeding the coordination and effectiveness of Federal, State, and local resources for service and volunteerism within the State." § 12638(f).

Furthermore, the NCSA provides that "[u]nless otherwise specifically provided, the Corporation has authority to award a grant or contract, or enter into a cooperative agreement, under the national service laws for a period of 3 years." § 12645a. However, not all grants are awarded for three-year terms. *See* 45 C.F.R. § 2521.20.

## II.    PARTIES' ARGUMENTS

### A.    *Complaint* (Doc. 1.)

In the *Complaint*, Plaintiff asserts that "[t]his action arises under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706; the National and Community Service Act (NCSA), 42 U.S.C. §§ 12501 et seq.; the U.S. Constitution (Appropriations Clause and Fifth Amendment Due Process Clause); and applicable federal regulations (Uniform Guidance, 2 C.F.R. Part 200; AmeriCorps ASN regulations, 45 C.F.R. Part 2540)." (Doc. 1 at ¶ 1.) Plaintiff contends that jurisdiction is proper in the Middle District of Louisiana under 28 U.S.C. § 1331, 5 U.S.C. § 702, 28 U.S.C. § 1361, and 28 U.S.C. § 2201. (*Id.* at ¶ 2.)

Plaintiff alleges that it is "the state service commission under Louisiana law, responsible for administering AmeriCorps State and National grant programs in Louisiana." (*Id.* at ¶ 3.) It claims that Defendant AmeriCorps "is an independent federal agency authorized by Congress to award and oversee AmeriCorps grants." (*Id.* at ¶ 4.) It also names as a defendant DOGE, which it claims "directed the cancellation of AmeriCorps grants without notice or process[]" on April 25, 2025. (*Id.* at ¶ 5.) Finally, Plaintiff names the OMB as a defendant, claiming that it "issued a memorandum rescinding funding for AmeriCorps awards, precipitating DOGE's and AmeriCorps Agency's actions." (*Id.* at ¶ 6.)

8

Plaintiff alleges that "[o]n April 25, 2025, AmeriCorps sent a Termination Notice to Volunteer Louisiana, which administers grants to Serve Louisiana[,]" ordering that all award activities stop immediately. (*Id.* at ¶ 7.) Plaintiff alleges that the notice "declared the decision final and non-appealable[.]" (*Id.*) According to the affidavit of Lisa Moore, the Executive Director for Serve Louisiana, AmeriCorps awarded Serve Louisiana $701,000 in federal grants for fiscal year 2024. (Doc. 1-2 at ¶ 2.) Plaintiff alleges that it "currently employs 37 AmeriCorps members who serve in 18 nonprofit and grassroots organizations throughout Baton Rouge and New Orleans[,]" claiming that if the termination takes effect, these members would be forced to leave their positions three months early and lose their stipends, health insurance, and education awards. (Doc. 1 at ¶ 8.) In addition, Plaintiff asserts, its "18 partner organizations will lose valuable service support; and Serve Louisiana itself will lose two full-time staff positions[.]" (*Id.*)

Plaintiff lists the following claims for relief:

In Count I, Plaintiff asserts that Defendants violated the APA, alleging that their "sudden, unexplained rescission of a compliant grant is arbitrary, capricious, and an abuse of discretion." (*Id.* at ¶ 14.) In Count II, Plaintiff alleges that Defendants "acted beyond the authority granted by the National and Community Service Act and the Serve America Act[,]" also in violation of the APA. (*Id.* at ¶ 15.) In Count III, Plaintiff alleges that Defendants did not follow legal procedure in terminating the contract, in violation of the APA. (*Id.* at ¶ 16.) In Count IV, Plaintiff alleges that "Defendants violated statutory due process by terminating a grant without notice or a hearing[]" in violation of the NCSA, 45 C.F.R. § 2540.400(b)(1). (*Id.* at ¶ 17.) In Count V, Plaintiff alleges that Defendants failed "to specify all termination provisions in the terms and conditions and bypassed the appeal process[]" in violation of the Uniform Guidance, 2 C.F.R. § 200.342. (*Id.* at ¶ 18.) In Count VI, Plaintiff alleges that Defendants failed to follow AmeriCorps regulations giving

Plaintiff the right to dispute resolution and requiring reasonable notice and opportunity for a hearing prior to termination in violation of 45 C.F.R. §§ 2540.230(a) and 2540.400(b). (*Id.* at ¶ 19.) In Count VII, Plaintiff alleges that "Defendants' rescission of appropriated funds usurps Congress's exclusive power over the purse[]" in violation of Article I, Section 9, Clause 7 of the United States Constitution. (*Id.* at ¶ 20.) Finally, in Count VIII, Plaintiff alleges that the termination of grant payments without due process was a violation of Plaintiff's property interests in violation of the Fifth Amendment of the United States Constitution. (*Id.* at ¶ 21.)

**B.**     ***Motion for Preliminary Injunction* (Doc. 9)**

In its *Motion for Preliminary Injunction* (Doc. 9) and *Memorandum in Support of Motion for Preliminary Injunction* (Doc. 9-2), Plaintiff argues that it "is likely to succeed on its APA claims[]" but does not address its other claims. (Doc. 9 at ¶ 6.) It also asserts that it "will suffer immediate and irreparable harm[]" as a result of "[c]ritical service positions" being terminated, programs being disrupted, and institutional expertise and public trust being loss. (*Id.* at ¶ 7.) Plaintiff further asserts that the balance of equities and public interest weigh in its favor because of its role in "deliver[ing] essential educational, health, and disaster-response services." (*Id.* at ¶ 8.) It argues that an interruption in funding during this litigation would cause "harm to vulnerable communities[,]" whereas a "delay in implementing rescissions imposes only a minimal burden on Defendants relative to the severe disruption to Plaintiff's service network." (*Id.*) Plaintiff asserts that Congress created AmeriCorps through the National and Community Service Act (NCSA), 42 U.S.C. § 12501 *et seq.*, which it argues requires "notice and hearing before AmeriCorps assistance can be suspended or terminated for cause." (Doc. 9-2 at 2–3.) Plaintiff argues that AmeriCorps "may suspend or terminate payments under a grant only for 'material failure to comply' with the terms," and then only after notice and opportunity to be heard. (*Id.* at 3.) Plaintiff claims that

funding may not be terminated for changed priorities. (*Id.*) In addition, Plaintiff points to AmeriCorps regulation 45 C.F.R. § 2540, which it argues allows for termination for failure to comply with terms and conditions but only after notice and opportunity to be heard. (*Id.*) Plaintiff argues that this notice must be in writing, provide grounds for termination, give the effective date of termination, provide at least seven days for the grantee to show cause as to why the grant should not be terminated, and allow the grantee to request an evidentiary hearing. (*Id.*) Plaintiff asserts that the AmeriCorps regulations do not allow termination "for new agency priorities or political reasons[.]" (*Id.*)

Plaintiff argues that the only basis for terminating a grant because of agency priorities comes from the OMB Uniform Guidance, 2 C.F.R. § 200.340, which states that a federal award may be terminated by the agency "'if an award no longer effectuates the program goals or agency priorities.'" (*Id.* at 3–4 (quoting 2 C.F.R. § 200.340(4)).) However, Plaintiff contends that this allows termination on this basis *only* "if that condition was 'clearly and unambiguously' specified in the award's terms and conditions and is authorized by law." (*Id.* at 4.) Plaintiff argues that "AmeriCorps's *General Terms and Conditions* for the FY2024–2025 grants did not" allow for terminations for a change in agency priorities and in fact prohibited arbitrary terminations of agency awards. (*Id.*) Plaintiff asserts that this termination was "an arbitrary, unilateral termination not based on any failure by the grantee[]" and was therefore prohibited by the agency's own terms. (*Id.*) It contends that "because the NCSA itself does not 'authorize by law' convenience terminations of AmeriCorps grants[,]" the Uniform Guidance provision permitting termination based on changed priorities "is *inapplicable* to this program: the 'new priorities' basis cannot be invoked contrary to the program's governing statute." (*Id.*) Plaintiff again contends that the

Uniform Guidance allow such terminations for changed priorities only where not arbitrary and where the agency's terms provide for such terminations. (*Id.*)

Next, Plaintiff turns to the APA, 5 U.S.C. §§ 701–706, arguing that it "provides that persons aggrieved by final agency actions are entitled to judicial review, except where another statute provides an exclusive remedy." (*Id.*) Plaintiff asserts that the APA requires courts to set aside agency actions that are "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]'" are "'contrary to constitutional right[,]' or" are "'in excess of statutory jurisdiction.'" (*Id.* at 4–5 (quoting 5 U.S.C. § 706(2)(B), (C)).) Plaintiff argues that AmeriCorps' termination without individualized consideration or articulated grounds, in violation of the NCSA and AmeriCorps' own regulations, "is the epitome of arbitrary and capricious agency action." (*Id.* at 5.) It claims that the relief sought, the preservation of the status quo pending review, is provided for under the APA. (*Id.* (citing 5 U.S.C. § 705).)

Plaintiff then addresses its Appropriations Clause claims, arguing that the funds awarded to Serve Louisiana were appropriated by Congress for AmeriCorps and cannot be impounded by the Executive Branch. (*Id.*) It argues that this raises separation-of-powers concerns, asserting without citations that agencies "cannot terminate congressionally funded programs arbitrarily without statutory authority." (*Id.*)

Plaintiff further asserts that it possesses "a constitutionally protected property interest in continued grant funding during the grant term" because of the limitations on AmeriCorps' discretion to terminate the grant. (*Id.* at 6.) It claims that because it had a grant for a defined period, subject to statutory and regulatory provisions that constrained arbitrary termination, "it had a legitimate entitlement to receive grant funds through the grant period so long as it complied with the grant conditions." (*Id.*) Plaintiff argues that at minimum, it was entitled to due process requiring

12

"notice of the specific reasons and an opportunity to contest the termination before an impartial official[,]" which it claims it did not receive. (*Id.* at 7.)

Plaintiff cites to a number of non-precedential cases that it claims support its motion for a preliminary injunction. (*Id.* at 7–10.) None are from this circuit, and only one is from the past five years. (*Id.*) This most recent case is the only one that addresses the recent flurry of litigation following cuts to government grants: the District of Rhode Island issued a preliminary injunction enjoining the federal government from enforcing, in the twenty-three plaintiff states and the District of Columbia, its determination that numerous health programs and appropriations were no longer necessary. *Colorado et al. v. U.S. Dep't of Health & Hum. Servs., et al.*, No. 1:25-CV-121, 2025 WL 1426226 (D.R.I. May 16, 2025). The District of Rhode Island enjoined the federal government defendants from implementing any funding terminations and required it to treat all actions taken to implement the prior decision as null and void and rescinded. *Id.* While this may have some relevance to the instant matter, it is far from the most on point case of recent months.

Plaintiff then turns to the *Winter* standards for a preliminary injunction, arguing that it has established "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if relief is denied; (3) that the balance of equities (balance of harms) tips in the plaintiff's favor; and (4) that the requested injunction will not disserve the public interest." (Doc. 9-2 at 10 (citing *Winter v. NRDC*, 555 U.S. 7 (2008)).) Plaintiff argues that it is likely to succeed on the merits because the record shows "that AmeriCorps had no valid reasoned basis for terminating Serve Louisiana's grant, rendering the action arbitrary and capricious under [the APA]." (*Id.* at 12.) It argues that there was no clear rationale, that the notice given did not cite to any facts "nor to any change in law[,]" and that this "fails the core APA requirement that an agency articulate a rational connection between the facts found and the choice made." (*Id.*) Plaintiff argues

13

that the agency was required to undertake an individualized review, and that more importantly, it based its decision on impermissible grounds. (*Id.*)

Specifically, Plaintiff asserts that "AmeriCorps relied on a factor Congress did not authorize – shifting political priorities – and failed to consider the statutory constraints (42 U.S.C. 12636) requiring cause and due process." (*Id.* at 13.) Plaintiff argues that AmeriCorps "ignor[ed] the NCSA's and its own regulations' limits[]" and therefore "acted in excess of its statutory jurisdiction[.]" (*Id.*) It likewise contends that the termination "violated AmeriCorps' own procedures (45 C.F.R. § 2540.400) and the Uniform Guidance's requirement to 'clearly and unambiguously' communicate termination conditions." (*Id.*) Plaintiff argues that the labelling of this action as "a priorities-based termination (with 'no appeal') rather than a termination for cause (which would trigger a hearing)[]" amounts to "an end-run around mandated process." (*Id.*)

Plaintiff also argues that it "is likely to succeed on a claim that the termination violated the National and Community Service Act and was ultra vires." (*Id.* at 14.) It claims that when Defendants terminated Plaintiff's grant for a reason not provided in the NCSA, they "acted beyond their authority." (*Id.*) In addition, Plaintiff argues that the right to unilateral termination was not reserved in the grant agreement's terms and conditions, which Plaintiff describes as "a binding contract between AmeriCorps and Serve Louisiana's sponsor[.]" (*Id.*) As a result, it maintains, funding can only be terminated for cause, "or possibly if 'new evidence' showed the program was infeasible." (*Id.*)

Plaintiff similarly argues that it is likely to prevail on its claim that the termination of its funds violated its Fifth Amendment due process rights. (*Id.* at 15.) It claims that at minimum, it was entitled to "(1) advance notice of the reasons for termination, (2) an opportunity to respond (ideally in a live evidentiary hearing) to contest the termination, and (3) a neutral decision-

maker[,]" none of which were provided. (*Id.*) Plaintiff further argues that this was not the type of emergency situation that would allow for post-deprivation hearing—and that a post-deprivation hearing was not provided, regardless. (*Id.*) Plaintiff asserts that Defendants attempt to "sidestep constitutional due process by labeling a deprivation as something else[,]" but insists that "[i]f the effect is to cut off an entitlement, due process applies." (*Id.* at 16.)

Finally, Plaintiff argues that it is likely to succeed in its Appropriations Clause claim: it contends that the Executive Branch does not have the authority to simply stop funding by declaring that a category of grants does not fulfill the administration's priorities. (*Id.* at 16–17.) Plaintiff argues that allowing the Executive Branch to cancel funding beyond its limited power under the Impoundment Control Act would permit the Executive "to nullify Congress's intent." (*Id.*) Plaintiff claims that it believes OMB and DOGE coordinated with AmeriCorps and references "internal communications"—but has not produced these communications nor sought discovery. (*Id.* at 17.) However, Plaintiff claims that "even on the face of it, an agency citing only 'agency priorities' (which likely stem from an administration policy) suggests a top-down budget cut not authorized by Congress[,]" which it argues "bolsters the APA *ultra vires* claim and may also stand as a separate constitutional claim[.]" (*Id.*)

With respect to irreparable harm, Plaintiff asserts that absent an injunction, employees funded by AmeriCorps grants (both those directly employed by Serve Louisiana and those placed at its partner nonprofits) will be laid off, leading to a loss of "organizational capacity built up by Serve Louisiana" and the "kind of disintegration of a service program [that] is not something money can later fix." (*Id.* at 18.) Plaintiff argues that absent injunctive relief, it could have to permanently shut down, "and while a Tucker Act suit in the Court of Federal Claims could seek some damages, that process is lengthy and cannot revive the program in time[]." (*Id.*) In addition,

15

Plaintiff contends, the primary harm is not the lost profits but the "community impact[]" which poses "intangible harms[.]" (*Id.*) Plaintiff argues that even if it could recover some damages in the Court of Federal Claims, "that would not restore its programs or reputation[,]" which would suffer "incalculable . . . harm to reputation and goodwill[.]" (*Id.* at 19.) Plaintiff argues that courts have found this type of harm sufficient for an injunction in previous cases. (*Id.*)

In addition, Plaintiff argues that the termination causes "an ongoing constitutional injury" which it contends may constitute an irreparable harm without any further showing. (*Id.* at 19.) Plaintiff asserts that absent injunctive relief allowing it to continue its programming, its community partners "will lose manpower, some in the middle of critical projects" such as hurricane recovery. (*Id.* at 20.) Plaintiff argues that this loss of funds also impacts Louisiana as a whole, which it argues is "an injury to the public that Louisiana's state officials (and this Court sitting in equity) rightly consider irreparable." (*Id.*)

Plaintiff moves to the balance of equities, which it argues favor Serve Louisiana. (*Id.*) Plaintiff points to the harms to the public stated above, while asserting that Defendants face no real harms if the injunction is granted. (*Id.* at 21.) Plaintiff claims that if the Court grants the injunction, "Defendants will be required to do nothing more than continue operating the grant as originally planned for a while longer." (*Id.*) Plaintiff argues that this preservation of "the status quo of program operations" cannot cause "legitimate harm" because it is simply asking the agency "to comply with the law and honor its commitments." (*Id.*) Plaintiff asserts that there cannot be "an interest in aligning spending with the new administration's priorities or conserving federal funds[]" here because "Congress has already appropriated these funds for AmeriCorps grants this year[.]" (*Id.*) According to Plaintiff, Defendants are still able to "pursu[e] their policy goals in other ways[,]" such as changing future grant allocations. (*Id.*) Plaintiff argues that the last three months

16

of funds intended for Serve Louisiana are "a drop in the bucket for the federal government, whereas cutting it causes devastation to the plaintiff." (*Id.*) Plaintiff argues that the balance of equities favors preserving the status quo via an injunction—and therefore Serve Louisiana. (*Id.* at 22.)

Plaintiff elaborates on its arguments as to the public interest, asserting that it would be served by granting the injunction. (*Id.* at 22–25.) It contends that the public interest is served by federal agencies obeying the law, (*id.* at 22–23); that Serve Louisiana benefits the public interest by serving Louisiana's vulnerable communities, (*id.* at 23); that a disruption in funding would harm the public interest by depriving Serve Louisiana's volunteers of the opportunity to complete their service, (*id.* at 23–24); that "restarting a dismantled program would be costly, slow, and perhaps impossible[,]" creating waste and inefficiency that undermines the federal government's goals and is contrary to the public interest, (*id.* at 24); and that the public does not have any interest in budget cuts that are "carried out by illegal or summary action[,] (*id.*).

Plaintiff seeks injunctive relief to:

> "(1) enjoin Defendants (OMB, DOGE, AmeriCorps, and their officers) from enforcing or implementing the April 25, 2025 termination of Serve Louisiana's AmeriCorps State & National grant; (2) require that Defendants restore the status quo ante by permitting Volunteer Louisiana and Serve Louisiana to continue drawing down grant funds and carrying out program activities as authorized prior to termination; (3) forbid Defendants from reducing, reallocating, or otherwise diminishing the grant funding due to Serve Louisiana under the existing award; and (4) enjoin Defendants from taking any retaliatory or adverse actions against Serve Louisiana or its members on account of this litigation or the injunction."

(*Id.* at 25.) Plaintiff requests either no bond or a nominal bond. (*Id.* at 11.)

### C.    Defendants' *Motion to Dismiss* (Doc. 28)

In their *Motion to Dismiss*, Defendants argue that "Plaintiff has not sufficiently alleged subject matter jurisdiction in this proceeding or stated a viable claim for relief." (Doc. 28 at 1.)

17

They argue that this is a contractual dispute over monetary damages that should be governed by the Tucker Act, 28 U.S.C. § 1491(a)(1) and therefore subject to the jurisdiction of the Court of Federal Claims. (*Id.*) They contend that "Plaintiff has not identified any other viable jurisdictional basis for these claims[]" and that "Plaintiff's regulatory citations . . . do not give rise to any independent cause of action[.]" (*Id.*)

Defendants' primary argument is that this is a contractual dispute between Plaintiff as the beneficiary of an AmeriCorps grant and the government, making it a claim for money damages. (Doc. 28-2 at 1.) Defendants argue that because it is a contractual claim for monetary damages, the grant termination is not reviewable under the APA, because "the APA does not waive sovereign immunity for claims of money damages and will not support a cause of action where an adequate, alternative remedy is available." (*Id.*) They maintain that jurisdiction is instead proper under the Tucker Act, and they argue that the Supreme Court has in fact rejected similar APA claims. (*Id.* (citing *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025)).)

Defendants give a factual background of AmeriCorps, explaining that it was created through the National and Community Service Trust Act of 1993 as a "wholly owned government corporation as defined in 5 U.S.C. § 103 and an executive agency as defined in 5 U.S.C. § 105." (*Id.* at 2.) Defendants explain that AmeriCorps advances its goal of volunteerism by issuing "prime grants" to "'state commissions,'" which in Louisiana, is Volunteer Louisiana. (*Id.* (citing 42 U.S.C. § 12638(a); La. R.S. 49:1112).) This state commission processes those "prime grants" to "subgrantee applicants" within the state—such as Plaintiff Serve Louisiana. (*Id.*) Defendants rely on this grant process in its characterization of this dispute as a contractual matter. (*Id.* at 3.)

Defendants maintain that "AmeriCorps establishes national service priorities for its grants, but Congress has also reserved to AmeriCorps the right to 'periodically alter' those priorities[,]"

which apply not only to the state commissions but also to the subgrantees. (*Id.* (citing 42 U.S.C. §

12572).) Defendants acknowledge that Serve Louisiana is a subgrantee that was notified "that

changed agency priorities disqualified [Serve Louisiana] from receiving further assistance[.]" (*Id.*)

Defendants argue that "the grant terms and conditions specifically reserve the right of AmeriCorps

to terminate awards in accordance with 2 C.F.R. § 200.340 without any restriction or carve-out for

specific subsections under that regulation." (*Id.* at 3–4.) They assert that all Plaintiff truly seeks is

"the remaining balance of its award[.]" (*Id.* at 4.) Defendants contend that none of Plaintiff's other

claims—"that AmeriCorps has failed to comply with various notice and hearing provisions of its

own regulations in violation of the Administrative Procedure Act (APA), that it was denied a

property interest in violation of the Fifth Amendment's Due Process Clause, and that its funding

is a Congressional directive under the Appropriations Clause[]"—are viable. (*Id.*) As a result, they

again argue that "this lawsuit is fundamentally a contract dispute over which the U.S. Court of

Federal Claims has exclusive jurisdiction under the Tucker Act." (*Id.*)

Defendants maintain that Plaintiff's suit "is in actuality a suit for money damages[]" for

which the APA does not waive sovereign immunity and for which Plaintiff has an adequate,

alternative remedy in the form of "a suit brought under the Tucker Act in the Court of Federal

Claims." (*Id.* at 6.) They argue that "[n]on-tort claims against the United States for money damages

in excess of $10,000 must be heard by the Court of Federal Claims under the Tucker Act." (*Id.* at

7 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988); *cf.* 28 U.S.C. § 1346(a)(2)).)

Defendants assert that the APA's provisions for judicial review retain relevant limitations, namely

that it "does not provide a cause of action for 'money damages.'" (*Id.* (citing 5 U.S.C. § 702).) In

addition, they assert that the APA cannot provide relief where a plaintiff has an adequate,

alternative remedy in another court. (*Id.* at 8 (citing *Rollerson v. Brazos River Harbor Navigation*

*Dist. of Brazoria Cnty. Tex.*, 6 F.4th 633, 641 (5th Cir. 2021) (internal citations omitted)).)
Defendants claim that "Plaintiff can seek full consideration of its claims through the Tucker Act."
(*Id.*) Although Plaintiff seeks declaratory and injunctive relief, Defendants assert that "the
substance of the pleadings must prevail over their form[]" and continue to characterize this action
as a contractual dispute for money damages. (*Id.* at 9–10.) They argue that the inconvenience of
the Tucker Act's remedies does not mean "that the Tucker Act is not an adequate alternative
remedy." (*Id.* at 10.) Defendants point to *Department of Education v. California*, a per curiam
decision from a divided Supreme Court granting an application from the Government to stay a
TRO construed as a preliminary injunction pending appeal, 145 S. Ct. at 968–69, to assert that
"such disputes over terminated grants are suits for money damages that are properly brought under
the Tucker Act, not the APA." (*Id.* at 6.) Defendants contend that the key question is "'[t]he source
of rights upon which the plaintiff bases its claims and the type of relief sought.'" (*Id.* at 12 (quoting
*United States Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 162–63 (D.D.C.
2025) (hereinafter "*USCCB*") (internal quotations omitted)).) Defendants contend that here,
Plaintiff's claims sound in contract and are therefore properly brought under the Tucker Act. (*Id.*
at 13.)

　　In addition, Defendants argue that this "is nothing more than a challenge to the day-to-day
operations of AmeriCorps and the agency's discretion to choose which grants best advance agency
priorities[,]" which they argue is not permitted by the APA. (*Id.* at 6.) Defendants assert that
"Plaintiff challenges the decisions made by AmeriCorps to its agency priorities and unspecified,
broad guidance issued by the other defendants[,]" which they argue "cannot serve as a predicate
to conduct an improper review of AmeriCorps' operations or agency priorities." (*Id.* at 15 (citing
*cf. Solutions in Hometown Connections, et al. v. Noem, et al.*, 2025 WL 1530318, at *14 (D. Md.

May 29, 2025)).) Defendants contend that AmeriCorps "reserves the right to 'periodically alter'" its grant priorities. (*Id.* at 15 (quoting 42 U.S.C. § 12572(f)(1)(A)).)

Moving beyond Plaintiff's APA claims, Defendants argue that Plaintiff has not adequately asserted claims under the Due Process Clause of the Fifth Amendment or under the Appropriations Clause. (*Id.* at 16.) Defendants again characterize the grant as a government contract, which they argue does not lead to an entitlement triggering a due process claim. (*Id.* at 17–18.) Likewise, they assert that there is no Appropriations Clause claim, which they argue merely constrains AmeriCorps to pay out that money and only that money from the Treasury that has been appropriated by Congress. (*Id.* at 19.) Defendants argue that Plaintiff has not and "cannot state a plausible claim for a violation of the Appropriations Clause[.]" (*Id.* at 19–20.)

Finally, Defendants argue that Plaintiff's citations to regulations fail to identify causes of action under which the United States waives sovereign immunity. (*Id.* at 20.) Defendants do acknowledge that these regulations set forth notice and hearing requirements, but they argue that these "do not purport to create a right to judicial review, to waive the United States' sovereign immunity, or to establish a private right of action for their enforcement." (*Id.* at 21 (citing *c.f. Crandall v. N. Light E. Main Med. Ctr.*, 2025 WL 1233200, at *3 (D. Maine Apr. 29, 2025)).) Defendants argue that to the extent Plaintiff claims "that the regulations were applied arbitrarily," these are superfluous to its APA claims and should, furthermore, be brought under the Tucker Act. (*Id.*) Defendants contend that Plaintiff's invocation of the Declaratory Judgment Act is likewise duplicative of its other claims. (*Id.*)

### D.    Defendants' *Opposition to Motion for Preliminary Injunction* (Doc. 29)

In their *Opposition* (Doc. 29), Defendants argue that a preliminary injunction is not warranted because they assert, for largely the reasons argued in their *Motion to Dismiss*, that

Plaintiff is not likely to succeed on the merits. They again contend that this is a contractual dispute governed by the Tucker Act, (Doc. 29 at 1–2); that the decision to terminate the grant was within AmeriCorps' discretion such that the APA does not apply, (*id.* at 2); and that Plaintiff Serve Louisiana has not stated other viable claims, (*id.*). Defendants further argue that Plaintiff has not met the other elements necessary for a preliminary injunction. (*Id.*) Defendants' arguments with respect to the likelihood of success on the merits are largely a re-statement of their arguments in the *Motion to Dismiss*. (*Id.* at 2–22.) In addition to addressing the likelihood of success on the merits, though, Defendants briefly argue that Plaintiff has not established irreparable harm because, again, they assert that this is merely a question of monetary remedies. (*Id.* at 22.) They contend that generally, "economic loss alone does not usually rise to the level of irreparable harm." (*Id.* (citing *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011)).) While they acknowledge that "the Fifth Circuit has recognized an exception to the general rule that economic loss does not create irreparable harm 'where the [monetary] loss threatens the very existence of the movant's business[,]'" (*id.* (quoting *Texas v. EPA*, 829 F.3d 405, 434 n.1 (5th Cir. 2016)), Defendants argue that nonetheless "'a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury[,]'" (*id.* (quoting *Johnson v. Owens*, 2013 WL 12177176, at *1 (W.D. Tex. Aug. 5, 2013)).) Defendants contend that Plaintiff only "claims in uncertain terms that the termination of AmeriCorps funding '*could* force the program to permanently shut down[.]'" (*Id.* at 23 (quoting Doc. 9-2 at 18).) They also assert that Plaintiff has not attested as to whether they took any steps to "secure interim sources of funding—i.e., state or private funding." (*Id.* (citing Doc. 1-2).) Defendants contend that Plaintiff's affidavit focuses on the individual harms incurred by Serve Louisiana members and employees, who are not plaintiffs, rather than the harm to Serve Louisiana itself. (*Id.* (citing Doc. 1-2 at ¶¶ 5–8).)

Defendants then turn to the balance of equities and public interests, arguing that if Defendants hold onto the money during the pendency of the case, Plaintiff "can still obtain and use it (every dollar of it) at the end of the case." (*Id.* at 24.) Again, this relies on the characterization of the suit as a contractual dispute for money damages. Defendants argue that if the Court gives Plaintiff access to the grant award for the pendency of the litigation, "Federal Defendants will be left with no meaningful recourse even if they prevail[]"—a fascinating contention for a party contending that this is like any contractual dispute for money damages. (*Id.*) Defendants claim that they will "bear all the risk if the Court enters a preliminary injunction, whereas Serve Louisiana will bear none if the Court denies one." (*Id.*) Defendants' argument is, remarkably, that the Court may be able to order them, the Government, to pay Plaintiff monetary damages—but if the Court were to find that Plaintiff owed the Government a sum of money, the Court would have no mechanism to similarly order Plaintiff to compensate the Government. Consequently, Defendants request "a bond equal to the size of any payment that the Court orders on a preliminary basis here[,]" arguing that "[w]ithout such a protective measure, there may be no way to recover the funds lost to United States' taxpayers if the Court—or any reviewing court—were later to find that the Federal Defendants were 'wrongfully enjoined.'" (*Id.* (quoting Fed. R. Civ. P. 65(c)).)

### E.    Plaintiffs' *Reply* (Doc. 31)

Plaintiff filed *Reply Memorandum in Support of Plaintiff's Motion for Preliminary Injunction Introduction* (Doc. 31). Although the title addresses only Plaintiff's *Motion for Preliminary Injunction*, this brief addresses both Defendants' *Motion to Dismiss* and *Opposition*; the Court will therefore construe it as a combined opposition to Defendants' *Motion to Dismiss* and reply to Defendants' *Opposition*. In its *Reply*, Plaintiff argues that this action is proper under the APA "because Plaintiff seeks equitable relief from an ultra vires agency action, not money

damages." (Doc. 31 at 1.) It argues that its claims are proper under the APA rather than the Tucker Act because this is not a contract dispute for money damages but is instead a suit for "equitable relief under the APA to set aside an unlawful agency action (the grant termination) and to enjoin the agency from implementing that action." (*Id.* at 2.) It argues that the Tucker Act's jurisdiction does not extend to suits seeking "**non-monetary, injunctive relief** against federal officials acting beyond their lawful authority[]" such as those where the plaintiff seeks "an order requiring the agency to conform to law, even if compliance may require the expenditure of appropriated funds." (*Id.*) Plaintiff points to *Bowen v. Massachusetts*, in which the Supreme Court distinguished between a suit "to set aside an agency's withholding of federal funds[]" and a suit for "retroactive damages . . . []which would fall under the Tucker Act[]." (*Id.* (citing 487 U.S. 879 (1988)).) Plaintiff argues that this suit is akin to that in *Bowen*—a request "to undo an illegal agency action and maintain the **status quo ante**; any continued disbursement of grant funds is incidental to that prospective equitable remedy, not a separate money judgment." (*Id.*)

Plaintiff distinguishes between this suit and *Department of Education*, arguing that in that case, "multiple states sought to enforce alleged contractual obligations for payment of grant funds after a program-wide cancellation[,]" whereas here, Plaintiff "challenge[s] the *lawfulness* of AmeriCorps' action under governing statutes and regulations, rather than merely demanding performance of a contract." (*Id.* at 2–3.) It argues further that *Department of Education* was decided "in an emergency posture and did not constitute a binding merits decision." (*Id.* at 3.) Instead, Plaintiff maintains, "that case stands for the uncontroversial proposition that purely contractual claims for monetary relief belong in the Claims Court[]" without "foreclos[ing] APA review where, as here, a plaintiff alleges that an agency violated federal law in terminating a grant and seeks equitable relief." (*Id.*) Plaintiff argues that all it asks from the Court is "to set aside an

unlawful agency action." (*Id.*) Consequently, it argues that it does not have an adequate remedy in the Court of Federal Claims. (*Id.*)

With respect to the question of agency discretion, Plaintiff argues that agency "actions are not immune from review when the agency has bound its discretion by rules or when the action violates statutory or regulatory constraints." (*Id.* at 4.) It contends that "[t]he APA's 'committed to discretion' exception is narrow, applicable only in 'rare instances' where there is no meaningful standard for a court to apply." (*Id.*) Here, Plaintiff argues, there are "ample legal standards" that a court can apply. (*Id.*) Plaintiff points to 2 C.F.R. § 200.340, invoked by AmeriCorps in its termination letter and incorporated into the grant terms and conditions, (*id.*); and to the APA's arbitrary and capricious standard found in 5 U.S.C. § 706(2)(A) and its provision in 5 U.S.C. § 706(2)(D) for review to determine whether "required procedures were ignored[,]" (*id.* at 5). Plaintiff argues that here, AmeriCorps had "specific program regulations and grant terms that provide standards against arbitrary action." (*Id.*) According to Plaintiff, AmeriCorps' failure "to follow its own regulations or reli[ance] on impermissible considerations . . . raise questions of regulatory compliance and reasoned decision-making, not matters committed to agency discretion beyond the reach of the courts." (*Id.*)

In addition, Plaintiff argues that it "indisputably has standing as the directly affected grant recipient." (*Id.* at 1.) It maintains that "[t]he termination of the AmeriCorps grant inflicts a palpable harm on Plaintiff's organization – the loss of funding that is the lifeblood of its service programs – and on its ability to carry out its mission." (*Id.* at 6.) Plaintiff argues this is traceable to Defendants through the termination letter and would be redressable by an injunction, "which would restore funding and allow the program to continue operating[]." (*Id.*) While it reiterates the harm to its members and employees, Plaintiff argues that its "standing rests on the injury to *itself* – the

organization's loss of funding and the impending shutdown of its program." (*Id.*) Plaintiff asserts that it "is an intended beneficiary of the national service grant program and the regulations that govern grant terminations[,]" and that it therefore has standing to sue under the APA. (*Id.*)

Plaintiff turns from standing to the question of irreparable harm, arguing that the threatened harm is not merely economic but a threat to Serve Louisiana's existence, pointing to the "looming reality[]" of the organization's shut down absent a preliminary injunction. (*Id.* at 7.) In the event of a shut down, Plaintiff claims that it "will have to dismiss its AmeriCorps members and staff, terminate service activities across Louisiana, and potentially dismantle the organizational infrastructure built up over years of partnership with AmeriCorps." (*Id.*) Plaintiff argues that "an injury that threatens the existence of an organization or program can indeed constitute irreparable harm." (*Id.*) It points to "the collapse of a community service program" as a harm that cannot be remedied with monetary damages. (*Id.*) In addition, Plaintiff argues that there are no alternative funding sources comparable to the federal grants provided by AmeriCorps, and it asserts that Defendant has not pointed to any evidence of such funds. (*Id.* at 7–8.) Plaintiff argues that "it cannot instantaneously substitute a new grant or private donations for the hundreds of thousands of dollars withdrawn by AmeriCorps." (*Id.* at 8.) It also contends that it is not required to show attempts to secure alternate funding to prove irreparable harm. (*Id.*) Furthermore, Plaintiff contends that AmeriCorps cannot be characterized as a mere funding program—it also provides "AmeriCorps members who commit a year of service, along with federally funded education benefits and program infrastructure that simply cannot be replicated by a quick infusion of state or private money." (*Id.*) Consequently, it asserts that the termination of the AmeriCorps grant "inflicts qualitative harms beyond the dollar amount." (*Id.*) Plaintiff argues that the loss of its staff is a loss

26

to it as an organization of "the human capital and goodwill that are essential to its mission[]" as opposed to injuries to third parties. (*Id.*)

Plaintiff then turns to the question of likelihood of success on the merits, arguing that it "has shown a substantial likelihood of success, or at least serious questions going to the merits, on its claims that the grant termination was unlawful." (*Id.* at 9.) It contends that Defendants' arguments are simply a repackaging of their jurisdictional arguments, which it disagrees with. (*Id.*) With respect to its APA claims, Plaintiff contends that the record supports its assertion that the termination was arbitrary in violation of AmeriCorps' own regulations. (*Id.*) It asserts that "Defendants have not identified any *change in law or factual development* that rendered Plaintiff's program misaligned with agency priorities[,]" nor any change in Plaintiff's performance. (*Id.* at 10.) Furthermore, Plaintiff argues that "[t]he lack of an individualized rationale suggests the decision was a broad policy reversal rather than a careful assessment of Plaintiff's grant." (*Id.*) Plaintiff maintains that an "[a]gency action is arbitrary if the agency fails to consider important aspects of the problem or offers an explanation that runs counter to the evidence[,]" which it argues it can show occurred here. (*Id.*) Notably, Plaintiff does not provide any evidence beyond the single affidavit and the termination letter provided with the *Complaint*. (Docs. 1-1, 1-2.)

Plaintiff argues that it does not need to show "a statute mandating funding" in order to assert a claim against AmeriCorps for "exceeding its lawful authority and acting arbitrarily[]" in terminating the funding. (Doc. 31 at 10.) It contends that the termination decision "contravene[s] the agency's own regulation against arbitrary terminations," and "lack[s] any reasonable factual basis," and as such, "the action is '*not in accordance with law*[.]'" (*Id.*) Plaintiff argues that it is therefore likely to succeed on the merits of "its APA claim to vacate the termination as unlawful agency action." (*Id.* at 11.) Plaintiff argues that while specific grant regulations may not confer a

right of action, the APA confers a right of action "to seek judicial review of agency action that is alleged to violate those regulations or to be procedurally improper." (*Id.*) It argues that these claims are part of its APA claim and should be considered as such. (*Id.*)

Plaintiff also argues that its claims that the termination of funds violated the Due Process and Appropriations Clause or Spending Clause are likely to succeed on the merits. (*Id.*) It contests Defendants' characterization of its claims as contractual, arguing that Serve Louisiana had a "legitimate claim of entitlement to continued grant funding for the duration of the grant term, absent good cause for termination." (*Id.* at 12.) Plaintiff argues that this claim of entitlement does not merely emerge from the grant agreement but from the regulatory scheme's prohibitions on arbitrary terminations. (*Id.*) In addition to arguing that "by issuing a grant award for a fixed term (through the program year) and by promulgating rules that limit mid-term termination to specific grounds, the government created a cognizable property interest in the continuation of the grant as long as the Plaintiff complied with the grant conditions[,]" Plaintiff asserts that it was entitled to due process prior to the termination of the grant. (*Id.*) Specifically, Plaintiff argues that "the agency's failure to provide any notice or opportunity to respond before effectively de-funding the program violated the Fifth Amendment's due process guarantee." (*Id.*) It argues that on this point, too, it is likely to succeed on the merits.

Finally, Plaintiff argues that it is likely to succeed on the merits of its Appropriations Clause claim because although "appropriations give agencies discretion in spending, [] that discretion must be exercised consistent with law." (*Id.*) It contends that where Congress has appropriated funds that AmeriCorps then appropriated, "an Executive decision to retract those obligated funds based on a policy change may contravene the intent of Congress or statutory limits[.]" (*Id.*) While acknowledging that these arguments are "more nuanced," Plaintiff argues that it is likely to succeed

"if the Court finds that the agency's proffered rationale (change in priorities) is not grounded in any authority granted by Congress." (*Id.* at 12–13.)

Plaintiff then proceeds to the balance of the equities and public interest considerations. Here, it notes that these factors merge since the government is the Defendant. (*Id.* at 13.) It argues that an injunction would serve the public interest because "denying relief would not only irreparably harm Plaintiff but also disserve the public by abruptly halting an ongoing AmeriCorps project." (*Id.*) Likewise, Plaintiff contends that "[t]he public interest is served when agencies are held to the rule of law[.]" (*Id.*) It argues that Defendants have not identified any substantial harm incurred by a potential injunction, only "using funds already appropriated for this purpose." (*Id.*) In sum, Plaintiff argues that "[e]nsuring that federal agencies do not capriciously terminate grants is certainly in the public's interest, as it preserves trust in government's dealings and the efficacy of federally funded programs." (*Id.*)

## F.    Defendants' *Reply* (Doc. 35)

In their *Reply*, Defendants first argue that Plaintiff has not responded to the *Motion to Dismiss*, focusing on the title rather than substance of Plaintiff's responsive pleading. (Doc. 35 at 1.) They then reiterate largely the same arguments made in their *Motion to Dismiss* and *Opposition*, first arguing that Plaintiff's claim is a contractual one for monetary damages rather than a claim for injunctive relief, requiring exclusive jurisdiction in the Court of Federal Claims under the Tucker Act. (*Id.* at 2–5.) Defendants next argue that Plaintiff seeks to challenge discretionary agency acts, for which the APA does not waive jurisdiction. (*Id.* at 5–7.) Defendants then assert that Plaintiff's statutory and regulatory claims are simply a restatement of its APA claims and should be dismissed as superfluous. (*Id.* at 7.) Finally, Defendants assert that Plaintiff has failed to

state a claim upon which relief may be granted with respect to its Due Process or Appropriations Clause claims. (*Id.* at 7–9.)

## III.   LEGAL STANDARDS

### A.   Jurisdiction

"The United States is immune from suit unless it unequivocally consents." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020) (citing *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009)). The Administrative Procedure Act includes such a waiver, albeit limited: it waives immunity for those actions brought by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" and "seeking relief other than money damages[.]" 5 U.S.C. § 702. The APA makes judicially reviewable only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704.

The Tucker Act provides an alternative adequate remedy in the Court of Federal Claims for monetary damage involving "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States[.]" 28 U.S.C. § 1491(a)(1). *See Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 358–59 (5th Cir. 1987). Where such a claim sounds in contract and is in excess of $10,000, the Court of Federal Claims has exclusive jurisdiction. *Refaei v. McHugh*, 624 F. App'x 142, 148 (5th Cir. 2015) (citing 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 941 (5th Cir. 1999)); *see also Patterson v. Spellings*, 249 F. App'x 993, 995–96, 998 (5th Cir. 2007). To analyze whether a claim is properly brought under the Tucker Act, the Fifth Circuit instructs courts to ask whether: "(1) the action is against the United States; (2) the action is founded upon the Constitution, federal statute, executive

30

regulation, or government contract; and (3) the action seeks monetary relief in excess of $10,000."

*Amoco*, 815 F.2d at 359 (citing *Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983)). However, for *exclusive* jurisdiction in the Court of Federal Claims to be proper under the Tucker Act, the second question need only focus on whether the action is founded upon a government contract. *See Refaei*, 624 F. App'x at 148 (citing 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2); *Humphries*, 164 F.3d at 941).

### B.    Standing

"A proper case or controversy exists only when at least one plaintiff 'establish[es] that [it] ha[s] standing to sue.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019)). A plaintiff "must show that [he or] she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted)). "These requirements help ensure that the plaintiff has 'such a personal stake in the outcome of the controversy as to warrant [his or her] invocation of federal-court jurisdiction.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

"The plaintiff 'bears the burden of establishing standing as of the time [he or she] brought th[e] lawsuit and maintaining it thereafter.'" *Id.* at 58. (first alterations by this Court; second by *Murthy*) (quoting *Carney v. Adams*, 592 U.S. 53, 59 (2020)). A plaintiff "must support each element of standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific

facts that are necessary to support the claim." *Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 195 (5th Cir. 2012) (quoting *Lujan*, 504 U.S. at 561 (internal quotation marks and alterations omitted)). "At the preliminary injunction stage, then, the plaintiff must make a 'clear showing' that [he or] she is 'likely' to establish each element of standing." *Murthy*, 603 U.S. at 58 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis deleted)). "Where . . . the parties have taken discovery, the plaintiff cannot rest on 'mere allegations,' but must instead point to factual evidence." *Id.* (quoting *Lujan*, 504 U.S. at 561 (internal quotation marks omitted)).

Additionally, "standing is not dispensed in gross." *Id.* at 61 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (internal quotation marks omitted)). "That is, 'plaintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *Id.* (quoting *TransUnion*, 594 U.S. at 431). Thus, "for every defendant, there must be at least one plaintiff with standing to seek an injunction." *Id.*

### C.    APA

The Administrative Procedure Act provides that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The APA states that a reviewing court shall set aside agency findings, conclusions, and actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" or that fail to meet statutory, procedural, or constitutional requirements. 5 U.S.C. § 706(2). The Supreme Court has recently clarified that "courts, not agencies, will decide '*all* relevant questions of law' arising on review of agency action—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (quoting § 706) (cleaned up). It further clarified that while "judicial review of agency

32

policymaking and factfinding [is] deferential[,]" the APA "prescribes no deferential standard for courts to employ in answering [] legal questions." *Id.* (citing § 706(2)). "[A]gency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference." *Id.*

The APA provides that in determining whether an agency action, finding, or conclusion was unlawful, "the court shall review the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706.

### D.    12(b)(6) Motion to Dismiss

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference").

### E.    Motion for Preliminary Injunction

A plaintiff must demonstrate four requirements to obtain a preliminary injunction:

> 1) a substantial likelihood of success on the merits; 2) a substantial threat that he will suffer irreparable injury if the injunction is not issued; 3) that the threatened injury to him outweighs any damage

the injunction might cause to the state and its citizens; and 4) that
the injunction will not disserve the public interest.

*Ingebretsen ex rel Ingrebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 278 (5th Cir. 1996)

(citing *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 163 (5th Cir. 1993) (citations omitted)).

## IV. DISCUSSION

### A. Motion to Dismiss

#### a. *Jurisdiction*

##### i. *The Tucker Act*

Defendants argue that this Court lacks jurisdiction because, they contend, this is a purely

contractual dispute governed by the Tucker Act and therefore subject to exclusive jurisdiction in

the Court of Federal Claims. (Doc. 28-2 at 4.) Defendants encourage the Court to look beyond

Plaintiff's characterization of the pleadings and instead ensure "that the substance of the pleadings

[] prevail over their form." (*Id.* at 9.) Plaintiff, on the other hand, argues that it is Defendants who

have mischaracterized its *Complaint*. (Doc. 31 at 1.) It asserts that this is indeed a suit for equitable

relief seeking to enjoin an unlawful action by an agency under the APA, which is subject to this

Court's jurisdiction. (*Id.* at 2.) The fact that continued disbursement would ensue as a result of

injunctive relief, Plaintiff asserts, "is incidental to that prospective equitable remedy, not a separate

money judgment." (*Id.*)

As the Federal Circuit has stated in analyzing whether a claim is properly brought under

the APA or is indeed subject to jurisdiction under the Tucker Act, "in determining whether a

plaintiff's suit is to be heard in district court or the Court of Federal Claims, we must look beyond

the form of the pleadings to the substance of the claim." *Suburban Mortg. Assocs. v. U.S. Dep't of

Hous. and Urb. Dev't*, 480 F.3d 1116, 1124 (Fed. Cir. 2007). "The classification of a particular

action as one which is or is not 'at its essence' a contract action depends both on the source of the

35

rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). *See also, e.g., Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015); *B&B Trucking, Inc. v. U.S. Postal Serv.*, 406 F.3d 766, 768 (6th Cir. 2005) (applying the same test to a question involving the Contract Disputes Act (CDA)); *Evers v. Astrue*, 536 F.3d 651, 657–58 (7th Cir. 2008) (applying the same test to a CDA question); *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (applying to a Tucker Act question); *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 1290, 1299 (10th Cir. 2009) (applying to a Tucker Act question); *Trader Props., LLC v. United States*, No. G-14-254, 2015 WL 1208983 at *2 (S.D. Tex. Mar. 16, 2015) (applying the same test to a CDA question) (all citing *Megapulse*, 672 F.2d at 968). If at essence contractual, Plaintiff's claims will be governed by the Tucker Act and subject to jurisdiction in the Court of Federal Claims. *Amoco*, 815 F.2d at 359.

The Court, then, looks first at the three questions posed by the Fifth Circuit. *See Amoco*, 815 F.2d at 358. There is no dispute that this is an action against the United States. (*See* Doc. 28 at 1.) Nor is there any dispute that it is founded either upon the Constitution, an Act of Congress, or executive regulations (namely, Plaintiff's assertion that it is brought under the APA, the Due Process Clause, and the Appropriations Clause, in addition to other federal regulations), (Doc. 1 at ¶ 1), or, alternatively, a contract with the United States (as Defendants assert the grant should be characterized), (Doc. 28-2 at 1). However, which of these two is the basis upon which Plaintiff brings its claim is crucial in determining whether exclusive jurisdiction in the Court of Federal Claims is required by the Tucker Act. This dispute bleeds into the third question: whether this action seeks monetary relief in excess of $10,000. *See Amoco*, 815 F.2d at 358. Plaintiff argues that it does not, characterizing this as a suit for injunctive relief that could, as a consequence of

injunctive relief, cause Defendants to cease the unlawful termination of grant funds to Plaintiff. (Doc. 31 at 2.) Defendants, on the other hand, argue that grant is in fact a contract, and what Plaintiff seeks is no more and no less than monetary damages for a breach of contract. (Doc. 28-2 at 9–10.)

The parties each point to a different Supreme Court case which, they respectively claim, should govern the Court's jurisdictional determination.

Plaintiff points to *Bowen v. Massachusetts*, a Supreme Court case that has been binding precedent for nearly forty years. *Bowen*, 487 U.S. 879 (1988). In *Bowen*, the Supreme Court held that district courts, not the Court of Federal Claims (or the United States Claims Court, as it was then known), had jurisdiction over agency actions where an agency refused to reimburse the State of Massachusetts for specific Medicaid expenditures. *Id.* at 882–83. The Supreme Court was clear that "a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money[,]" is not the same as "a suit seeking money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated[.]" *Id.* at 900. The former is a form of specific relief, sought in equity, while the latter is a form of damages, sought at law. The Supreme Court specifically stated "[t]he fact that the mandate is one for the payment of money must not be confused with the question whether such payment, in these circumstances, is a payment of money as damages or as specific relief." *Id.* at 900–01. In doing so, it noted, "[o]ur cases have long recognized the distinction between an action at law for damages—which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with backpay, or for 'the recovery of specific property *or monies*, ejectment from land, or injunction either directing or restraining the defendant officer's actions.'"

*Id.* at 893 (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949) (emphasis added in *Bowen*)). The Supreme Court relied heavily on the opinion of Judge Bork in *Maryland Department of Human Resources v. Department of Health and Human Services*, which stated that a suit is not one for money damages where a plaintiff "'is seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be, that [a plaintiff] will suffer or has suffered by virtue of the withholding of those funds. If the program in this case involved in-kind benefits this would be altogether evident.'" *Id.* (quoting *Maryland Dep't of Hum. Res. v. Dep't of Health and Hum. Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)). Judge Bork added "'[t]he fact that in the present case it is money rather than in-kind benefits that pass from the federal government to the states (and then, in the form of services, to program beneficiaries) cannot transform the nature of the relief sought—specific relief, not relief in the form of damages.'" *Id.* (quoting *Maryland Dep't of Hum. Res.*, 763 F.2d at 1446)).

Plaintiff argues that its suit is akin to that brought in *Bowen*—a suit brought in equity for specific relief to enforce the statutory mandates under which AmeriCorps is legally required to operate, the end result of which would be that Plaintiff would continue to receive its grant award. (Doc. 31 at 2.) It is not, Plaintiff asserts, a suit at law for compensatory damages. (*Id.*)

Defendants, for their part, point to *Department of Education v. California*, a recent per curiam decision from a divided Supreme Court. (Doc. 28-2 at 10–11 (citing *Dep't of Educ. v. California*, 145 S. Ct. 966).) The procedural posture of *Department of Education* is instructive: the Supreme Court granted a motion from the Government to stay the District Court of Massachusetts' temporary restraining order, which the Supreme Court construed as an appealable preliminary injunction. *Dep't of Educ.*, 145 S. Ct. at 968. The district court had issued an order requiring the federal government "to pay out past-due grant obligations and to continue paying obligations as

they accrue." *Id.* The First Circuit Court of Appeals denied the government's motion for a stay, which relied on its Tucker Act arguments, finding that this was not a suit for monetary damages. *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 97, 101 (1st Cir. 2025). The Supreme Court did not reach the merits of the issue or explain what factors led it to conclude that "the Government is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Dep't of Educ.*, 145 S. Ct. at 968 (citing *Sampson v. Murray*, 415 U.S. 61, 87 (1974)). Four justices would have denied the application for stay, with Justice Kagan writing a dissent and Justice Jackson writing a separate dissent that Justice Sotomayor joined.

The majority and both dissents all cite to *Bowen* approvingly. *Id.* at 968 ("[A] district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds."); *id.* at 969 ("[T]he general rule is that APA actions go to district courts, even when a remedial order 'may result in the disbursement of funds.'") (Kagan, J., dissenting); *id.* at 978 n.7 ("'The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages[.]"'") (Jackson, J., dissenting). Both Justice Kagan and Justice Jackson noted that this issue was not decided on the merits and that it did not upset Supreme Court precedent. *Id.* at 969 (Kagan, J., dissenting); *id.* at 976, 978 n.7 (Jackson, J., dissenting).

Plaintiff similarly argues that *Department of Education* should not dictate the Court's decision here because it was not decided on the merits, did not overrule binding Supreme Court precedent, and does not apply on the facts of the matter. (Doc. 31 at 3.) Indeed, at oral arguments, Defendants conceded that *Department of Education* did not overrule *Bowen*. However, they argued that *Bowen* does not apply to this dispute, maintaining that this is a quintessential contract dispute.

In their briefings and at oral arguments, Defendants urge the Court to rely on several cases which they claim support their argument that this is a contractual dispute. (Doc. 29 at 9; Doc. 35 at 3–5). First, Defendants point to *Suburban Mortgage Associates, Inc. v. U.S. Department of Housing and Urban Development*, in which a commercial mortgage lender sued the Department of Housing and Urban Development for breach of contract and sought money damages. *Suburban Mortg. Assocs.*, 480 F.3d at 1119. This is, obviously, not analogous. Defendants further point the Court to *City of Wheeling, West Virginia v. United States*, in which the United States Claims Court (renamed the Court of Federal Claims in 1992) held that the Tucker Act applied to a claim for damages under the Federal Water Pollution Control Act, which states that the Administrator of the Environmental Protection Agency "shall act upon the application" for a construction grant "as soon as practicable[,] and his approval 'shall be deemed *a contractual obligation* of the United States for the payment of its proportional contribution to such project.'" *City of Wheeling*, 20 Cl. Ct. 659, 661 (1990) (quoting 33 U.S.C. § 1283(a)(1)) (emphasis added). Neither of these two explicitly contractual claims for monetary damages are analogous to Plaintiff's claim for injunctive relief preventing the termination of a federal grant.

Defendants encourage the Court to look at the more recent *United States Conference of Catholic Bishops v. United States Department of State*, in which the United States Conference of Catholic Bishops ("USCCB") requested an emergency preliminary injunction preventing the termination of Cooperative Agreements in place between the USCCB and the Department of State. *USCCB*, 770 F. Supp. 3d 155, 159–60 (D.D.C. 2025). These Cooperative Agreements provided for the State Department's Bureau of Population, Refugees, and Migration to reimburse private resettlement agencies for expenses those agencies incurred in supporting refugees in their first weeks in the United States. *Id.* at 158. The USCCB's suit sought "millions of dollars in requested

*reimbursements* pending with State." *Id.* at 160. That the District of D.C. found this action to be in essence a contractual dispute for the specific performance of past due money damages and thus subject to Tucker Act jurisdiction is not, therefore, surprising. *Id.* at 166. It is, also, not analogous to the claims Plaintiff brings here.

Finally[2], Defendants point the Court to *Fort Bend County v. United States Army Corps of Engineers*, in which the Fifth Circuit found that Tucker Act jurisdiction was not required, instead stating that the Fifth Circuit has "held that 'where the statute in question specifically mandates the payment of money,' the suit may go forward under [the APA]." *Fort Bend Cnty.*, 59 F.4th 180, 191 (5th Cir. 2023) (quoting *Anderson v. Jackson*, 556 F.3d 351, 359 (5th Cir. 2009)). The Fifth Circuit explained "[t]hat is because such relief is prospective and cannot be characterized as 'compensatory relief ... designed to substitute for an injury to the plaintiff's person, property, or reputation.'" *Id.* (quoting *Anderson*, 556 F.3d at 359). Defendants' attempt to rely on *Fort Bend County* is baffling, given the Fifth Circuit's endorsement here of Plaintiff's argument.

In resolving this issue, the Court returns to the fundamental jurisdictional question: what is the source of the rights upon which Plaintiff bases its claims, and what is the remedy sought? *See Megapulse*, 672 F.2d at 968. To determine the source of the rights, "the Court 'considers whether, among other factors, the plaintiffs' asserted rights and the government's purported authority arise from statute,' 'whether the plaintiffs' rights exist prior to and apart from rights created under the contract,' and 'whether the plaintiffs seek to enforce any duty imposed upon the government by the . . . relevant contracts to which the government is a party.'" *Maryland v. Corp.*

---

[2] Defendants also point to *Sustainability Institute v. Trump*, in which the Fourth Circuit granted the Government's motion for a stay of the district court's permanent injunction and preliminary injunction pending appeal based on the decision in *Department of Education*. *Sustainability Institute*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025). This was merely a grant of a stay, not a ruling on the merits that the Court is able to rely upon as persuasive out-of-circuit precedent, but the Court notes that the Fourth Circuit based its decision on the fact that "the grants here were awarded by federal executive agencies to specific grantees from a generalized fund[]" pursuant to operative grant agreements rather than pursuant to specific statutory provisions. *Id.* at *2.

*for Nat'l & Cmty. Serv.*, No. DLB-25-1363, 2025 WL 1585051 at *23 (D. Md. June 5, 2025) (citing *Crowley Gov't Servs. v. GSA*, 38 F.4th 1099, 1107 (D.C. Cir. 2022)) (cleaned up).

Plaintiff challenges Defendants' termination of the grant as unlawful under the APA, as well as unconstitutional under the Due Process Clause and the Appropriations Clause. (Doc. 1 at ¶ 1.) The rights it asserts—to a notice and hearing prior to termination, to the right to appeal termination, to termination only for the reasons stated in AmeriCorps regulations or Uniform Guidance regulations—are rights that arise not from the alleged contract (that is, the terms and conditions of the grant), but from statute and regulations. (*See* 42 U.S.C. § 12501 *et seq.*, § 12572, § 12636; 45 C.F.R. § 2522.460; 2 C.F.R. § 200.342; 2 C.F.R. § 200.340.) They exist prior and apart from the terms and conditions that Defendants claim constitute the contract. (*See* Doc. 28-5.)

Here, AmeriCorps was created by statute in the NCSA. *See* 42 U.S.C. § 12501 *et seq*. The statute requires notice prior to termination. § 12636. It codifies certain agency priorities into law. § 12572(e). It requires that AmeriCorps give advance notice to applicants of any changes to national service priorities that will be in effect for a fiscal year. § 12572(f)(2).

Admittedly, in challenging the termination of the grant, Plaintiff has pointed not only to the NCSA and AmeriCorps rules, and to the Uniform Guidance governing the termination of federal grants, but also to the terms and conditions of the grant itself. (Doc. 31 at 4–5, 10–11.) However, these grant terms and conditions direct the organizations back to the same regulatory provisions Plaintiff cites, stating that the award may be terminated "in accordance" with 2 C.F.R. § 200.339, which outlines remedies for noncompliance, and with 2 C.F.R. § 200.340, or by the recipient in accordance with 2 C.F.R. §§ 200.339–341. (Doc. 29-4 at 17.) The grant conditions also explicitly state that the regulations "prohibit[] arbitrary termination of grant awards by AmeriCorps." (*Id.*) The terms and conditions state that "AmeriCorps may initiate termination for

cause, or when (based on new evidence) there is a significant question about the feasibility or effectiveness of the intended objective of the award." (*Id.*) The only condition explicitly stated in the terms and conditions that is not stated in the Uniform Guidance is the clarification that "significant question[s] about the feasibility or effectiveness of the intended objective of the award[]" must be "based on new evidence[.]" (*Id.*) This, alone, does not create rights arising from contract separate from the relevant statutes and regulations. Furthermore, the Court notes that these terms and conditions carry none of the traditional hallmarks of a contract—they instead outline the relevant statutes, rules, and regulations that grant recipients must comply with. (Doc. 29-4.) Finally, the Court notes that AmeriCorps regulations list separately "[g]rant solicitations and awards[]" and "[c]ontract solicitations and awards[.]" 45 C.F.R. § 2509.10(b). Likewise, the NCSA lists separately grants, contracts, and cooperative agreements. *See* § 12645a.

The Court, therefore, finds that the source of the rights Plaintiff asserts arises in statute, not contract.

Next, the Court turns to the question of the remedy sought. Defendants assert that Plaintiff seeks over $10,000 in monetary damages, while Plaintiff argues that it seeks injunctive relief that will consequently give it access to the federal grant it alleges Defendants unlawfully terminated. Plaintiff has not requested any damages—it has not asked for any monetary damages. It has not asked for reimbursement for the expenses that may have been incurred as a result of the termination of its AmeriCorps-funded employees, such as the costs of hiring new employees or overtime for existing employees. It has not asked for compensation for harms that may have occurred to ongoing projects as a result of a pause in activities. Instead, Plaintiff has requested specific relief and only specific relief: that the Court enforce the statutory mandates under which AmeriCorps operates. (Doc. 1 at 6.)

Specifically, Plaintiff asks the Court to enjoin AmeriCorps' termination of the grant as unlawful under the APA because it is arbitrary and capricious, an abuse of discretion, beyond statutory authority, and fails to meet procedural, regulatory, and statutory requirements for termination. (Doc. 1 at ¶¶ 14–19.) Plaintiff also asks the Court to enjoin the termination as unlawful under the Appropriations Clause, (*id.* at ¶ 20), and under the Fifth Amendment due to the alleged failure to provide Plaintiff with due process prior to termination, (*id.* at ¶ 21.) These are the exact type of requests for specific relief that the Supreme Court described in *Bowen*. While monetary payments to Plaintiff would ensue as a result of the sought after injunction, they are not necessarily the only downstream effect. As the Supreme Court explained in *Bowen*, there may be other interests that are equally or "more pressing than the monetary amount in dispute[]"—for example, the "interest in planning future programs[.]" *Bowen*, 487 U.S. at 906–07. Here, Plaintiff argues that the "sudden termination in the middle of the grant year" left it unable to plan for how else "to replace the funds." (Doc. 31 at 7.) It argues that "[t]he loss of the AmeriCorps grant thus inflicts qualitative harms beyond the dollar amount." (*Id.* at 8.) Plaintiff has stated that it is currently attempting to apply for a new round of grants, (Doc. 24 at 1), without any knowledge of what priority shifts led to this termination, (Doc. 31 at 10). It has also stated that it does not know its staffing capacity, ability to work with partner organizations, or ability to sustain ongoing projects absent the terminated grant. (Doc. 31 at 7–8.) This uncertainty in future planning, identified by the *Bowen* Court, cannot be remedied with later monetary damages. The *Bowen* Court was clear: "The District Court's jurisdiction to award complete relief in these cases is not barred by the possibility that a purely monetary judgment may be entered in the Claims Court." *Bowen*, 487 U.S. at 910.

This Court is not the first to consider whether the termination of AmeriCorps grants falls under Tucker Act jurisdiction. The District of Maryland, considering this exact question in an

action brought by twenty-four states similarly seeking injunctive relief blocking the termination of AmeriCorps funds, "easily conclude[d] that the [] APA claims are not, in 'essence,' contract claims." *See Maryland*, 2025 WL 1585051 at *25. The District of Maryland was unconvinced by the Government defendants' argument that the challenge, alleging "that the defendants acted contrary to law (Count I), without observance of procedure required by law (Count II), and arbitrarily and capriciously (Count III)" in violation of the APA, was in fact a claim for monetary damages due to a breach of contract. *See id.* at *11, *25.

In addition, multiple other district courts have found that similar—although not identical—challenges are subject to their jurisdiction rather than Tucker Act jurisdiction. For example, the District of D.C., in considering a challenge to the termination of Environmental Protection Agency grants, found that "these claims are not 'in essence' contract claims," and that it could retain jurisdiction. *Climate United Fund v. Citibank, N.A.*, No. 25-CV-698, 2025 WL 1131412 at *9 (D.D.C. Apr. 16, 2025). It stated, "the D.C. Circuit has 'explicitly rejected the "broad" notion "that any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act" because to do so would "deny a court jurisdiction to consider a claim that is validly based on grounds other than a contractual relationship with the government."'" *Climate United Fund*, 2025 WL 1131412 at *9 (quoting *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) (quoting *Megapulse*, 672 F.2d at 967-68)). After finding it had jurisdiction, the District of D.C. granted the preliminary injunction preventing the termination of the grants.

Likewise, the District of Massachusetts found that the Tucker Act did not apply in a challenge to terminations of grants related to gender and to diversity, equity, and inclusion. *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, Civil Action No. 25-10787-WGY, 2025 WL 1548611

at *6 (D. Mass. May 30, 2025). There, "[t]he motion for preliminary injunction was collapsed into a trial on the merits pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, the opposition to the motion was construed as a motion to dismiss, and the Plaintiffs' reply was construed as an opposition." *Id.*, 2025 WL 1548611 at *1. The Court found that it had jurisdiction and granted in part and denied in part the motion to dismiss. *Id.* at *6, *15. It referred to the District of Massachusetts' ruling in *Massachusetts v. Kennedy*, in which the district court found that the Supreme Court had not overturned *Bowen* in *Department of Education* and that, therefore, "[t]he Tucker Act does not divest this Court of jurisdiction." *Massachusetts v. Kennedy*, Civil Action No. 25-10814-WGY, 2025 WL 1371785 at *9 (D. Mass. May 12, 2025). The Court in *Massachusetts v. Kennedy* found that it had jurisdiction; the motion for preliminary injunction had, in that matter, been withdrawn. *Id.*, 2025 WL 1371785 at *11.

These cases all distinguish between the injunctive relief sought in equity and monetary damages sought at law. *See Bowen*, 487 U.S. at 893. Defendants' arguments are founded on the exact type of confusion the Supreme Court warned against in *Bowen*. *See Bowen*, 487 U.S. at 901. Because the enforcement of AmeriCorps' mandate would require it to continue funding Plaintiff's grant, Defendant has mistaken this for a payment of money damages. *Id.* (citing *Md. Dep't of Hum. Res.*, 763 F.2d at 1446 (Bork, J.)).

The Supreme Court's recent per curiam emergency grant in *Department of Education* did not overrule *Bowen*. *Dep't of Educ.*, 145 S. Ct. 966. "'[I]t is [the Supreme] Court's prerogative alone to overrule one of its precedents.'" *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (per curiam) (quoting *United States v. Hatter*, 532 U.S. 557, 567 (2001)). The High Court's "'decisions remain binding precedent until [it] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.'" *Id.* (quoting *Hohn v. United States*, 524 U.S.

236, 252–53 (1998)). "If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to th[e] [Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). *See also Roake v. Brumley*, 2025 WL 1719978 at *14 (5th Cir. June 20, 2025). "This is true even if the lower court thinks the precedent is in tension with some other line of decisions." *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 356 (5th Cir. 2024) (quoting *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023)). Nor did the Supreme Court's per curiam emergency stay address the merits question in *Department of Education*. *Id.* Nor, indeed, did it provide any dicta distinguishing *Department of Education* from *Bowen*. *Id.* Under these circumstances, the Court remains bound by the precedent set by *Bowen*.

<i>ii.  Agency Discretion</i>

In addition, Defendants argue that this is an agency action committed to agency discretion by law and therefore not subject to judicial review under the APA. (Doc. 29 at 16–20.) The APA allows judicial review of agency actions "except to the extent that[] . . . statutes preclude judicial review," 5 U.S.C. § 701(a)(1), or when "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2). "This means that the court shall not review an agency action if the law governing the action 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Mejia-Alvarenga v. Garland*, 95 F.4th 319, 327 (5th Cir. 2024) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

Defendants contend that AmeriCorps' actions here were committed to agency discretion because they "concerned how best to re-allocate funds to align with its policy objectives[.]" (Doc. 29 at 17.) However, Congress has limited AmeriCorps' discretion to make any significant changes

to its program requirements or to make any significant policy changes in multiple ways. For one, a number of AmeriCorps priorities are statutorily codified in the NCSA, stating that AmeriCorps "*shall* give priority" to certain service corps and programs. 42 U.S.C. § 12572(e) (emphasis added). For another, AmeriCorps is required to give advance notice to applicants of the national service priorities that will be in effect each fiscal year, including any changes in priorities and which service programs are eligible for priority consideration in the next round of funding distribution. § 12572(f)(2). In addition, states may also set priorities, reviewable by AmeriCorps, but which may be different than those of AmeriCorps. § 12572(f)(1)(B), 45 C.F.R. § 2522.460. Furthermore, notice, hearing, and grievance procedures for the termination of payments are set forth by statute. 42 U.S.C. § 12636. Moving beyond the NCSA itself, changes to AmeriCorps program requirements or policies require public notice and comment rulemaking. Further Consolidated Appropriations Act, 2024, 118 P.L. 47 § 401; 138 Stat. 460. Notably, Defendants do not contend that the agency did this; instead, they argue simply that reallocating funds based on new policy priorities is an act of agency discretion. (Doc. 29 at 17.) Defendants point to *Lincoln v. Vigil*, 508 U.S. 182, 185–88 (1993), arguing that there, "the Supreme Court held that the Indian Health Service's decision to discontinue a program it had previously funded and to instead reallocate those funds to other programs was committed to agency discretion by law and thus not reviewable under the Administrative Procedure Act's reasoned-decisionmaking standards." (*Id.* at 17.)

The Court is unpersuaded by Defendants' reasoning. As the District of Maryland recently explained in response to similar arguments, "*Lincoln* concerned the Snyder Act and the Indian Improvement Act, statutes under which Congress generally authorized the IHS to '"expend such moneys as Congress may from time to time appropriate, for the benefit, care, and assistance of the Indians," for the "relief of distress and conservation of health"' and for 'therapeutic and residential

[mental health] treatment centers[.]'" *Maryland*, 2025 WL 1585051 at *16 (quoting *Lincoln*, 508 U.S. at 185 (quoting 25 U.S.C. §§ 13, 1621(a)(4)(D))). When "IHS, which received lump-sum appropriations," chose to discontinue a program it funded through this unrestricted lump-sum appropriation, it was within the agency's discretion to do so. *Id.* (citing *Lincoln*, 508 U.S. at 184–94). It was able to do so because "[t]he program was not referenced in either the Snyder Act or the Improvement Act, nor was it referenced in the congressional appropriations act providing IHS with a lump sum appropriation." *Id.* "That is, 'Congress never authorized or appropriated moneys expressly for the Program' or otherwise 'statutorily restrict[ed] what can be done with those funds.'" *Id.* (quoting *Lincoln*, 508 U.S. at 187, 192 (internal quotations omitted)). "[T]he appropriations Acts for the relevant period d[id] not so much as mention the Program, and both the Snyder Act and the Improvement Act likewise speak about Indian health only in general terms." *Lincoln*, 508 U.S. at 193-94.

In *Maryland*, the Government argued that "implementation of the [National Civilian Community Corps] is committed to agency discretion and is not subject to judicial review under the APA." *Maryland*, 2025 WL 1585051 at *16. The District of Maryland contrasted the facts of *Lincoln* with the facts at issue there, stating that "[i]n *Lincoln*, the appropriation bills did not mention the terminated program at all[,]" whereas "[h]ere, the appropriations act mentions the NCCC." *Id.* at *17. Likewise, in the instant case, the appropriations act mentions AmeriCorps and allocates $975,525,000 "[f]or necessary expenses for the Corporation for National and Community Service (referred to in this title as 'CNCS') to carry out the Domestic Volunteer Service Act of 1973 (referred to in this title as '1973 Act') and the National and Community Service Act of 1990 (referred to in this title as '1990 Act')[.]" 2024 Appropriations Act, 118 P.L. 47 Title IV. Congress then explicitly limited AmeriCorps' discretion beyond those limits the Court has already identified

in AmeriCorps' own regulations and the Uniform Guidance for federal grants. *Id.* at § 401. It stated that AmeriCorps "shall make any significant changes to program requirements, service delivery or policy only through public notice and comment rulemaking." *Id.*

The Court is persuaded that here, "Congress has, therefore, 'circumscribe[d] agency discretion.'" *Maryland*, 2025 WL 1585051 at *17 (citing *Lincoln*, 508 U.S. at 193). Congress clearly stated specific agency programs and priorities; it "circumscribe[d] agency discretion to allocate resources by putting restrictions in the operative statutes[,]" *Lincoln*, 508 U.S. at 193; and it "set parameters for when AmeriCorps can make changes to 'program requirements, service delivery or policy[,]'" *Maryland*, 2025 WL 1585051 at *17. The termination of the AmeriCorps grant was not committed to agency discretion and is reviewable by the Court under the APA.

### b.     Standing

Defendants do not raise any challenges to Plaintiff's standing. Plaintiff, however, characterizes their *Opposition* as raising the argument that Plaintiff lacks standing. (Doc. 31 at 1.) To the extent that this is an issue, the Court finds that Plaintiff has standing.

Plaintiff has alleged an injury in fact that is concrete, particularized, and actual or imminent: it claims that the termination of the grant would force it to lay off employees, lose organizational capacity, pause or even cease critical services that are essential to its mission, and dismantle its programing. (Doc. 31 at 7.) These are injuries to Serve Louisiana, the organization— the loss of manpower is a loss to the organization, as is the loss in organizational capacity, in addition to the impact they may have on individuals; the inability to continue ongoing critical services is a harm to Serve Louisiana's core mission, in addition to the impact it may have on the community; and the dismantling of ongoing organizational programming is clearly a harm to Serve Louisiana. The fact that others are impacted does not negate the injury to Plaintiff itself. *See*

*Louisiana v. Biden*, 55 F.4th 1017, 1033–35 (5th Cir. 2022) (discussing injury to an organization in the context of irreparable harm, but specifically stating that "an employee be[ing] fired and a new employee hired" is a harm to the employer because of the "mass disruptions" it causes, noting harms to "efficiency, institutional memory, and operational know-how").

In addition, Plaintiff has alleged that this harm is traceable to Defendants—it alleges that all of these harms stem from the termination of the federal grant award, and it points to the April 25, 2025, termination letter it received from Jennifer Bastress Tahmasebi, Interim Agency Head of AmeriCorps. (Doc. 1-1.)

Finally, Plaintiff alleges that these harms caused by the alleged unlawful termination of the grant would be redressable by a favorable ruling finding that the termination of the grant violated the APA, the Appropriations Clause, and the Due Process Clause. (Doc. 1 at 6.) A favorable ruling would require the federal Defendants to reinstate the grant and follow the statutory and constitutional requirements in order to make any changes to grant funding.

Accordingly, Plaintiff has sufficiently alleged standing.

### c.    *12(b)(6) Motion to Dismiss*

Moving beyond Defendants' 12(b)(1) challenge to the Court's jurisdiction under the APA, Defendants argue that Plaintiff has failed to state a claim for relief under the Due Process Clause of the Fifth Amendment or under the Appropriations Clause.

### i.    *Due Process*

First, Defendants argue that Plaintiff does not have any entitlement to the federal grant award and that it cannot therefore assert a Due Process claim. (Doc. 28-2 at 16.) Their argument relies on the continued characterization of the grant award as a government contract. (*Id.* at 17–18.) Plaintiff counters that "by issuing a grant award for a fixed term (through the program year)

and by promulgating rules that limit mid-term termination to specific grounds, the government created a cognizable property interest in the continuation of the grant as long as the Plaintiff complied with the grant conditions." (Doc. 31 at 12.) Plaintiff provides no authority for this proposition, despite ample existing caselaw on the question of government entitlements. For example, as early as 1972, the Supreme Court held that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). The Fifth Circuit has reiterated this, stating "[p]roperty interests 'are not created by the Constitution' but 'are created and their dimensions are defined' by independent sources, like state law." *Brookwood Dev. L.L.C. v. City of Ridgeland*, No. 24-60017, 2024 WL 4835244 at *3 (5th Cir. Nov. 20, 2024) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)). It likewise reiterated that "[a] party has a protected property interest when it shows a 'legitimate claim of entitlement,' not merely a 'unilateral expectation.'" *Id.* (quoting *Roth*, 408 U.S. at 577). The Fifth Circuit clarified that while "[a] benefit does not achieve entitlement status if officials retain the discretion to grant or deny it[,]" *id.* (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 226 (5th Cir. 2008)), it can become a protected property right "[i]f the law, however, sets 'substantive limits on official discretion,'" *id.* (quoting *Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008)). In substantive limits on discretion, the Fifth Circuit states that courts "look[] for 'explicitly mandatory language,' indicating that if the regulation's criteria are met, a specific result must follow. *Id.* (quoting *Ridgely*, 512 F.3d at 735-36).

As statutory limits, Plaintiff points to AmeriCorps regulations, specifically 45 C.F.R. § 2540.400(b), which states that "the Corporation *must* provide the recipient reasonable notice and opportunity for a full and fair hearing," subject to stated conditions. 45 C.F.R. § 2540.400(b) (emphasis added). This regulation requires AmeriCorps to provide notification "by letter or telegram that the Corporation intends to terminate or revoke assistance, either in whole or in part, unless the recipient shows good cause why such assistance should not be terminated or revoked. In this communication, the grounds and the effective date for the proposed termination or revocation will be described. The recipient will be given at least 7 calendar days to submit written material in opposition to the proposed action." *Id.* at § 2540.400(b)(1). In addition, the NCSA requires notice, hearing, and grievance procedures for the termination of payments. 42 U.S.C. § 12636. Plaintiff argues that it did not receive either reasonable notice or opportunity for a hearing, pointing to the April 25, 2025 termination letter from the AmeriCorps interim agency head, which stated that the termination was effective immediately. (Doc. 1-1 at 1.) Nor did the letter provide at least seven calendar days to submit written opposition. (*Id.*)

Plaintiff also cites to 45 C.F.R. § 200.342, which states that the "agency *must* maintain written procedures for processing objections, hearings, and appeals[;]" "*must* provide the recipient with an opportunity to object and provide information challenging the action[;]" "*must* comply with any requirements for hearings, appeals, or other administrative proceedings to which the recipient or subrecipient is entitled under any statute or regulation applicable to the action involved." 2 C.F.R. § 200.342 (emphasis added). Granted, this provision applies to terminations for noncompliance. *Id.* It is unclear from the face of the regulations whether it likewise applies to terminations for awards that "no longer effectuate[] the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). However, 2 C.F.R. § 200.340(b) explicitly states that "[t]he Federal agency

or pass-through entity must clearly and unambiguously specify all termination provisions in the terms and conditions of the Federal award." It limits reasons for termination to noncompliance, 2 C.F.R. § 200.340(a)(1); "consent of the recipient or subrecipient," § 340(a)(2); "[b]y the recipient or subrecipient[,]" with some conditions, § 340(a)(3); or, most relevant to this action, "[b]y the Federal agency or pass-through entity pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities[,]" § 340(a)(4). The General Terms and Conditions for the 2025 AmeriCorps grants are over 20 pages long but dedicate only four sentences to the question of termination. (Doc. 28-5 at 17.) These grant terms and conditions direct the organizations back to the same regulatory provisions Plaintiff cites, stating that the award may be terminated by "in accordance" with 2 C.F.R. § 200.339, which outlines remedies for noncompliance, and with 2 C.F.R. § 200.340, or by the recipient in accordance with 2 C.F.R. §§ 200.339–341. (*Id.*)

The grant conditions also explicitly state that the regulations "prohibit[] arbitrary termination of grant awards by AmeriCorps." (*Id.*) The terms and conditions state that "AmeriCorps may initiate termination for cause, or when (based on new evidence) there is a significant question about the feasibility or effectiveness of the intended objective of the award." (*Id.*) Plaintiff argues that such new evidence does not exist, or at minimum, that it was never presented with such evidence or with the opportunity to request it. (Doc. 31 at 10.) As a result, Plaintiff argues, this termination—allegedly based on "agency priorities" was not in accordance with the terms and conditions of its grant and was not in accordance with law. (Doc. 31 at 4–5.) Instead, Plaintiff argues, it was sent a termination letter that did not provide any information on the factual basis for the termination and did not provide any reasonable notice or opportunity to be heard. (Doc. 31 at 9–10.)

These provisions in the Uniform Guidance on federal funding awards set forth clear substantive limits on AmeriCorps' discretion to terminate grants. They allowed AmeriCorps to terminate grants only for noncompliance, with consent, or when "an award no longer effectuates the program goals or agency priorities" so long as such termination is "pursuant to the terms and conditions of the Federal award[.]" 2 C.F.R. § 200.340(a). The terms and conditions of this award require that terminations due to "a significant question about the feasibility or effectiveness of the intended objective of the award" be "based on new evidence[.]" (Doc. 28-5 at 17.) In the event of a termination for cause, a hearing is required. 2 C.F.R. § 200.342. Likewise, the AmeriCorps-specific rules, which AmeriCorps is statutorily authorized—indeed, required—to promulgate, 42 U.S.C. § 12651c(c) ("[t]he Chief Executive Officer shall prescribe such rules and regulations as are necessary or appropriate to carry out the national service laws[]"), set forth explicit, mandatory limits on AmeriCorps' discretion to terminate grants. 45 C.F.R. § 2540.400(b).

In addition, the NCSA sets forth explicit national service priorities and requires that AmeriCorps "shall provide advance notice to potential applicants of any national service priorities to be in effect under this subsection for a fiscal year[,]" describing any changes in the priorities and which service programs are eligible for priority consideration for the next round of funding distribution. 42 U.S.C. § 12572(f). The Appropriations Act, likewise, requires that changes to AmeriCorps program requirements and policies be made subject to public notice and comment rulemaking. Further Consolidated Appropriations Act, 2024, 118 P.L. 47 § 401; 138 Stat. 460.

Plaintiff had a legitimate claim of entitlement to the AmeriCorps award it had previously been granted. AmeriCorps did not have unrestrained discretion to terminate the award at will but could only do so for noncompliance, with consent, or as provided for in the terms of the grant. 2 C.F.R. § 200.340(a). The grant terms and conditions likewise limited the agency's discretion to

terminate the grant by stating that the agency could not arbitrarily terminate the grant awards; it could initiate termination "for cause"; and that it could initiate termination when "there is a significant question about the feasibility or effectiveness of the intended objective of the award[]" but clarifying that this applies when "based on new evidence[.]" (Doc. 28-5 at 17.) AmeriCorps could change its priorities only with advance notice to applicants, 42 U.S.C. § 12572(f), and its program requirements and policies only after public notice and comment rulemaking, 118 P.L. 47 § 401. Given these clearly stated substantive limitations, none of which allow for unfettered agency discretion, Plaintiff had an entitlement to the award that had already been granted and therefore has a property interest in the award.

Defendants' *Motion to Dismiss* the Due Process claim relies entirely on their assertion that Plaintiff has no property interest in the grant award and cannot therefore "state a plausible claim for a violation of the Due Process Clause." (Doc. 28-2 at 19.) Because the Court disagrees, the *Motion to Dismiss* is denied on this ground.

*ii.*     *Appropriations Clause*

Defendants next argue that Plaintiff cannot state a claim under the Appropriations Clause because the Appropriations Clause simply constrains AmeriCorps to pay out that money and only that money from the Treasury that has been appropriated by Congress. (*Id.* at 19.) Plaintiff has advanced few arguments with respect to its Appropriations Clause Argument. (Doc. 1 at ¶ 20; Doc. 9 at 16–17; Doc. 29 at 12–13). Plaintiff alleges merely that the OMB "issued a rescission memorandum on April 24, 2025, directing the cancellation of AmeriCorps grant appropriations[,]" without attaching that memorandum or an affidavits regarding the memorandum. (Doc. 1 at ¶ 12.)

The District of Maryland recently found, in considering the termination of AmeriCorps grants, that AmeriCorps did not properly follow the notice-and-comment requirements set forth in

56

the 2024 Appropriations Act and reincorporated into the 2025 Appropriations Act. *Maryland*, 2025 WL 1585051 at *29–32 (citing 2024 Appropriations Act § 401, 138 Stat. at 695; 2025 Appropriations Act § 1101(a), 139 Stat. at 10-11). The Appropriations Act, of course, is not the same thing as the Appropriations Clause of the Constitution. Plaintiff's arguments, though, are more aligned with the arguments analyzed by the District of Maryland: Plaintiff contends that the Executive Branch does not have the authority to simply stop funding by declaring that a category of grants do not fulfill administration's priorities. (Doc. 9-2 at 16–17.) Indeed, the Appropriations Act requires a public notice and comment period before making "any significant changes to program requirements, service delivery or policy." 2024 Appropriations Act § 401, 138 Stat. at 695. This is not, however, the claim that Plaintiff makes. Plaintiff alleges an Appropriations Clause claim but provides no factual support that would allow the Court to find it has sufficiently alleged a claim for relief. While the Court is unconvinced by Defendants' contention that Plaintiff cannot plausibly state a claim for relief related to these allegations, the Court cannot find—even construing the *Complaint* in the light most favorable to Plaintiff—that Plaintiff has made sufficient factual allegations to state a plausible claim for relief. These claims are therefore dismissed without prejudice.

### iii.      *Plaintiff's Counts IV, V, and VI*

Plaintiff's Counts I, II, and III all explicitly allege violations of the APA: that Defendants' actions were arbitrary, capricious, and an abuse of discretion; beyond their statutorily granted authority; and in violation of the procedures required by law. (Doc. 1 at ¶¶ 14–16.) Plaintiff's Counts IV, V, and VI all simply articulate specific regulations that Defendants allegedly violated in terminating Plaintiff's grant, none of which establish an independent private right of action. (*Id.*

at ¶¶ 17–19.) However, to the extent they bolster Plaintiff's APA claim, the Court has considered them.

> iv.    *Leave to Amend*

"'[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted.'" *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955) (quoting *John Walker & Sons v. Tampa Cigar Co.*, 197 F.2d 72, 73 (5th Cir. 1952)). Federal Rule of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (cleaned up). *See* Fed. R. Civ. P. 15(a). "[L]eave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim." 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Plaintiff is therefore given leave to amend its *Complaint* with respect to the claims the Court has dismissed.

**B.    Motion for Preliminary Injunction**

> ***a.    Likelihood of Success on the Merits***

As the Court found above, Plaintiff has adequately alleged jurisdiction under the APA and has stated a claim for relief under the Due Process Clause. However, the Court has not yet analyzed the merits of Plaintiff's claims. For the reasons stated below, the Court finds that Plaintiff is likely to succeed on the merits.

First, with respect to Plaintiff's APA claims, the Court must set aside agency findings, conclusions, and actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that fail to meet statutory, procedural, or constitutional requirements. 5

U.S.C § 706(2). As the Court analyzed above, AmeriCorps was authorized to terminate grants only for noncompliance, with consent, or as provided for in the terms of the grant. 2 C.F.R. § 200.340(a). The terms of the grant provide that AmeriCorps could not arbitrarily terminate the grant awards; that it could initiate termination "for cause"; and that it could initiate termination "when (based on new evidence) there is a significant question about the feasibility or effectiveness of the intended objective of the award." (Doc. 28-5 at 17.)

The termination letter provided by Plaintiff states that its award was being terminated "[e]ffective immediately," and that Serve Louisiana "must immediately cease all award activities." (Doc. 1-1 at 1.) As a reason, it states only that "it has been determined that the award no longer effectuates agency priorities." (*Id.*) The letter explicitly states that the termination "is a final agency action and is not administratively appealable." (*Id.*) Plaintiff argues that this is an arbitrary agency action, taken without any individualized rationale. (Doc. 31 at 10.) While an agency's policymaking and its interpretations of facts are given deference, *Loper Bright*, 603 U.S. at 392. Defendants have produced no factual basis upon which AmeriCorps "determined that the award no longer effectuates agency priorities." (Doc. 1-1 at 1.) AmeriCorps may have the right to undertake different policy priorities, provided that it does so in accordance with all legal requirements such as notice and comment. However, if AmeriCorps chooses to terminate existing grants because they do not comply with new policy priorities, it is still required to follow both the standards set forth by the APA and those standards that AmeriCorps has set forth for itself.

In reviewing an agency action under the APA's arbitrary and capricious standard, "a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 145 S. Ct. 1497, 1511 (2025). "A court simply ensures that the agency has acted within a zone of

reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (citing *FCC v. Fox Television Stations, Inc.*, 556 U. S. 502, 513–514, (2009); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U. S. 29, 43 (1983); *FCC v. WNCN Listeners Guild*, 450 U. S. 582, 596 (1981)). The Court cannot find that an agency's action was reasonable, reasonably considered the relevant issues, or was reasonably explained when, as is the case here, there is *no* explanation. Indeed, counsel for Defendants admitted during oral argument that the explanation given of the agencies change in priorities justifying the termination was "lacking." Plaintiff therefore has a substantial likelihood of success on its claim that the termination was arbitrary and capricious in violation of the APA.

As the Court has already found, AmeriCorps' governing statutes limit the agency's discretion in a number of ways, including codifying a number of agency priorities, 42 U.S.C. § 12572(e); requiring the agency to give advance notice to applicants of priorities and changes to priorities for each fiscal year, § 12572(f)(2); allowing states to set their own priorities, with AmeriCorps review, which may differ from AmeriCorps priorities, § 12572(f)(1)(B), 45 C.F.R. § 2522.460; and requiring notice, hearing, and grievance procedures for the termination of payments, 42 U.S.C. § 12636. In addition, changes to AmeriCorps program requirements or polices require public notice and comment rulemaking. 2024 Appropriations Act, 118 P.L. 47 § 401. Plaintiff alleges these did not occur, and Defendants do not contest this. Accordingly, a change in agency priorities without advance notice, without any opportunity for a hearing or for grievance procedures, and without public notice and comment rulemaking for changes in AmeriCorps policies or program requirements would constitute an abuse of the agency's discretion. Plaintiff has a substantial likelihood of success on the merits with respect to its claim that the termination

of the grant due to changes in agency policies and priorities, absent advance notice, absent any opportunity for a hearing or for grievance procedures, is an abuse of agency discretion in violation of the APA.

Finally, in reviewing an agency action as not in accordance with law or for failing to meet statutory, procedural, or constitutional requirements, "agency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference." *Loper Bright*, 603 U.S. at 392. The Court has found that AmeriCorps rules and Uniform Guidance on federal funding awards provided Plaintiff with an entitlement to and therefore a property interest in the grant that has already been issued. Because Plaintiff has a property interest in the grant, it is entitled to due process—namely, notice and an opportunity to be heard—prior to the termination of the award. *See Adams v. City of Harahan*, 95 F.4th 908, 914 (5th Cir. 2024) (collecting cases to explain that where a plaintiff has alleged a liberty or property interest, it is "'entitled to a hearing conforming to minimal requirements of procedural due process of notice and an opportunity to be heard[]'" (quoting *Shaw v. Hospital Authority of Cobb County*, 507 F.2d 625, 628 (5th Cir. 1975)). Admittedly, the Uniform Guidance is unclear—and the parties have not briefed the issue—of whether the Uniform Guidance requires notice and hearing when a grant is terminated due to a change in agency priorities rather than due to noncompliance. *See* 2 C.F.R. § 200.342. However, Plaintiff was also entitled to notice and opportunity to be heard pursuant to AmeriCorps rules and procedures—which are clear. According to AmeriCorps rules, Plaintiff was entitled to a written communication stating "the grounds and the effective date for the proposed termination or revocation will be described. The recipient will be given at least 7 calendar days to submit written material in opposition to the proposed action." *Id.* at § 2540.400(b)(1). The termination letter provided is unequivocal: the termination was effective immediately and was unappealable. (Doc.

1-1 at 1.) Plaintiff has a substantial likelihood of success on its claim that the termination of the grant was not in accordance with law or failed to meet statutory, procedural, or constitutional requirements.

For those same reasons, Plaintiff has a substantial likelihood of success on its Due Process Clause claim. Plaintiff had an entitlement to the grant award already issued and therefore a property interest in the award; accordingly, due process requires notice and opportunity to be heard. Plaintiff alleges it was provided with neither and provides the termination letter in support; Defendants do not dispute this. Plaintiff has a substantial likelihood of success on its Due Process Clause claim.

Plaintiff has failed to state a claim under the Appropriations Clause and has therefore not shown a substantial likelihood of success on that ground.

### b.    *Irreparable Harm*

In general, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Book People, Inc. v. Wong*, 91 F.4th 318, 340–41 (5th Cir. 2024) (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)); *see also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 11A *Federal Practice and Procedure* § 2948.1 (3d ed. 2024) (same). However, as Defendants note and Plaintiff concedes "[i]n general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 585, 600 (5th Cir. 2011). This, then, returns the Court to the issue discussed above with respect to jurisdiction—is this a suit at law for money damages, or is it one in equity for injunctive relief? As the Court held above, this is a suit in equity for injunctive relief. Plaintiff has not requested damages, and the mere fact that money may be paid to Plaintiff as a result of an injunction does not transform this into a suit at law for

money damages. Furthermore, the Fifth Circuit in *Janvey* stated "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.*

Here, Plaintiff alleges that it will suffer irreparable harms that cannot be remedied through monetary damages alone, regardless of whether monetary damages would address the purely economic losses it faces. (Doc. 9-2 at 18.) It points to the loss of manpower and organizational capacity, losses of programming and reputation that would harm its ability to interact with the community, an inability to fulfill its core missions, and possible permanent closure. (*Id.* at 19–20.) These harms cannot be fully remedied with monetary damages. As the Fifth Circuit has stated in cases similarly involving the loss of manpower due to federal actions, "it is sufficient to show that even under the Government's best theory of the case, enough employees would likely leave as to constitute 'more than de minimis' harm," *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (quoting *Canal Authority v. Callaway*, 489 F.2d 567, 574 (5th Cir. 1974)), "at which point 'it is not so much the magnitude but the irreparability that counts,'" *id.* (quoting *Texas v. EPA*, 829 F.3d 405, 433–34 (5th Cir. 2016) (internal quotations omitted)). As in *Louisiana v. Biden*, Plaintiff here has shown that enough employees will be forced to leave to cause more than de minimis harm to Plaintiff, which will rapidly become irreparable.

### c.    Balance of Equities and Public Interests

As to the third and fourth factors, "Plaintiffs' risk of irreparable harm must be weighed against any injury the State would sustain. Where the State is appealing an injunction, its interest and harm merge with the public interest." *Book People*, 91 F.4th at 341 (citations omitted). Here, Plaintiff argues that the public interest is best served when federal agencies follow the law, and that it would not be served by an inefficient dismantling of programs that would then need to be restarted. (Doc. 9 at 24.) It likewise argues that the public interest is served by not terminating

programs that benefit Louisiana's most vulnerable communities, or by depriving volunteers of the opportunity to complete their service to those communities. (*Id.* at 23–24.)

Plaintiff further contends that the harm to Defendants is minimal—that there is no legitimate harm caused by requiring Defendants to follow the law and maintain the status quo set by their own statutes, regulations, and grant terms and conditions. (*Id.* at 21.) Plaintiff points to the size of the federal budget to argue that the termination of Plaintiff's grant does little to nothing to advance Defendants' stated policy goals of reducing waste and conserving funds. (*Id.*) It argues that these funds were already appropriated by Congress and must be spent, so terminating Plaintiff's grant does not conserve the funds. (*Id.*) It also argues that Defendants reserve the possibility of changing future grant allocations as a means of conserving funds or changing AmeriCorps priorities. (*Id.*)

Defendants, on the other hand, argue that the balance of equities and public interest weigh against an injunction. (Doc 29 at 24.) They again characterize this as a standard contractual dispute, arguing accordingly that they should be permitted to retain the money for the pendency of the case. (*Id.*) Defendants seem to argue that while they will, of course, forfeit the money to Plaintiff should the Court rule against them at the close of litigation, there is no guarantee that the money will likewise be recoverable from Plaintiff should the Government prevail. (*Id.*) Given Defendants' characterization of this matter as a standard contractual dispute for money damages, this is a puzzling statement on Defendants' view of the Court's authority. The Court continues to reject Defendants' argument that this case is subject to jurisdiction in the Court of Federal Claims under the Tucker Act. However, if a higher court should determine that this is indeed a contractual dispute, then the Court of Federal Claims is no doubt capable of ordering appropriate monetary damages or restitution from either party as in any contractual matter. Defendants do not present

any other arguments as to the public interest or equities. The Fifth Circuit has repeatedly held "that 'there is generally no public interest in the perpetuation of unlawful agency action.'" *Louisiana v. Biden*, 55 F.4th at 1035 (citing *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021)) (cleaned up). Given that the Court considers this action to be properly brought under the APA, the Court therefore finds that the balance of equities and public interests weigh in favor of Plaintiff.

### d.    Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

"'[T]he amount of security required pursuant to Rule 65(c) 'is a matter for the discretion of the trial court . . . .'" *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)).

> Accordingly, the judge usually will fix security in an amount that covers the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period the party is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained.

Wright, Miller, and Kane, *supra*, at § 2954. Indeed, the Fifth Circuit has "ruled that the court 'may elect to require no security at all.'" *Kaepa*, 76 F.3d at 628 (quoting *Corrigan Dispatch*, 569 F.2d at 303).

Defendants request "a bond equal to the size of any payment that the Court orders on a preliminary basis here." (Doc. 29 at 25.) Defendants, again, misunderstand the very nature of this dispute. The Court is not ordering that Defendants pay a specific sum of monetary damages to Plaintiff. The Court is ordering that Defendants place on hold the termination of the federal

AmeriCorps grant to Plaintiff, because there is a substantial likelihood that this termination was unlawful, it causes irreparable harm to Plaintiff, and the balance of equities and public interest weigh in favor of Plaintiff. Enjoining the termination of this grant may require the resumed disbursement of funds to Plaintiff, or that Plaintiff has resumed access to funds through the grant. But the Court is not ordering a "payment" to Plaintiff.

Plaintiff, on the other hand, requests no bond or a nominal bond. (Doc. 9-2 at 11.)

Considering that the Court has found that Plaintiff has a substantial likelihood of success on the merits of its claim that Defendants' actions were unlawful, the Court will impose a nominal bond of $100. As the Court has stated, this is not a contractual dispute for money damages; it is an injunction at equity preventing continued, likely unlawful agency actions. A nominal bond is therefore appropriate.

The District of Maryland, considering similar issues, likewise imposed a nominal bond of $100 per plaintiff. Like this Court, it held that it was "not ordering the payment of a sum certain. The Court is enjoining likely unlawful agency actions and ordering compliance with the law." *Maryland*, 2025 WL 1585051 at *39. The District of Maryland called the similar suit "a quintessential public interest lawsuit." *Id.* It pointed to the imposition of nominal bonds by numerous other courts in other public interest litigation challenging unlawful agency actions. *Id.* (collecting cases). While the District of Maryland's decision is certainly not binding on this Court, it is noteworthy that it reached the same conclusion—and that it pointed to so many other courts that have done so as well.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the *12(b)(1), (6) Motion to Dismiss by the United States of America* (Doc. 28) filed by Defendants Corporation for National and Community Service (d/b/a AmeriCorps Agency), United States Department of Government Efficiency, and the Office of Management and Budget is **DENIED IN PART** and **GRANTED IN PART**. It is **DENIED** with respect to their 12(b)(1) jurisdictional arguments: jurisdiction is proper in this Court under the APA. Defendant's 12(b)(6) motion is likewise **DENIED** with respect to the Due Process claims: Plaintiff has adequately pled a Due Process claim. However, Defendant's 12(b)(6) motion is **GRANTED** with respect to the Appropriations Clause claim: Plaintiff has not adequately pled an Appropriations Clause claim. Plaintiff is granted leave to amend this claim. Any amendments are due 28 days from this order. Failure to amend will result in dismissal of claims with prejudice. Defendants are instructed to contact the Court if the 28-day period passes and Plaintiff has failed to file any amended complaint.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion for Preliminary Injunction* (Doc. 9) is **GRANTED**. Plaintiff has shown a substantial likelihood of success on the merits on at least some of its APA claims and its Due Process Clause claim. It has also shown irreparable harm, and the Court finds that the balance of equities and public interests is in favor of an injunction. Accordingly, Plaintiff is entitled to the extraordinary remedy of a preliminary injunction.

Defendants are enjoined from enforcing the termination of the AmeriCorps grant to Plaintiff, the instruction that Plaintiff cease all award activities, the requirement that AmeriCorps members' activities cease, and the exiting of members for compelling personal circumstances. Defendants shall restore Plaintiff's programming to its status quo prior to the April 25, 2025, termination letter by reinstating the terminated grant and returning to service Plaintiff's AmeriCorps members who were serving at the time of the grant termination (and who are willing

and able to return to service). This order does not preclude Defendants from pursing the termination of Plaintiff's AmeriCorps grant for noncompliance or as otherwise authorized by law.

Within seven (7) days of this order, Defendants shall file a status report informing the Court of the actions they have taken to comply with this order.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond of one hundred dollars ($100) with the Clerk of Court within seven (7) days of this order.

Signed in Baton Rouge, Louisiana, on June 27, 2025.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**